HARDY, Judge.
Plaintiff, a judgment creditor of defendant, appeals from a judgment in favor of Wellman’s Funeral Parlors, Inc., intervenor and third opponent.
The facts and the law applicable were thoroughly considered and discussed in the written opinion of our distinguished brother of the district court. Careful examination of this opinion, in the light of the facts disclosed by the record, convinces us that we are in such complete accord with the reasoning of the learned district judge that we take the liberty of setting forth his opinion in full and adopting the same as an expression of our reasons for judgment on this appeal:
“Plaintiff obtained a judgment against defendant in this proceeding on the 14th day of November, 1951, for $610.-00 with interest. The judgment remains unpaid.
“Defendant Rice is a member of the Painters and Paperhangers of America Local Union No. 485 in Shreveport. This organization maintains a death *813 benefit fund available to such members of the union as desire to participate therein by voluntary contributions or assessments. Under the provisions of the by-laws of the organization, when a contributing member or his wife dies, the survivor is entitled to be paid the sum of $1,000.00. The contribution, or assessment, is $2.50 per member payable in advance and a new such assessment is made upon each occurring death. Thus the member or his spouse immediately becomes vested with the right to this, sum of money upon the death of the other. There are no restrictions in the by-laws as to how this money is to be spent.
“Mrs. J. T. Rice, defendant’s wife, died on May 30, 1953. At that time defendant was in good standing in the benefit fund. On the morning following the death of Mrs. Rice, to-wit, Saturday, May 30, 1953, defendant went to the funeral parlors of intervenor' and made arrangements with their representative to take charge of the funeral arrangements in connection with the death. At that time Mr. L. R. Gregory, Funeral Director of Wellman’s, agreed to render these services, which included the transportation of the body of Mrs. Rice to Selma, Alabama. Whereupon Mr. Rice executed the following instrument, which was prepared by Mr. Gregory. The instrument is on the letterhead of Wellman’s, and is as follows:
“ ‘May 30, 1953
“ ‘Painters Local No. 485
“ ‘Shreveport, Louisiana
“ ‘Gentlemen:
“ T wish you would pay the Well-man’s Funeral Parlors Nine Hundred Seven & 26/100 ($907.26) Dollars, for the funeral expenses of my wife, Mrs. Janie H. Rice. This amount to come out of your donation insurance plan of which I am a member.
“‘Thank you very much for your prompt attention.
“‘(sgd) J. T. Rice
“‘Rt. 4, Box 335
“ ‘Shreveport, La.
“ ‘Witness:
“‘(sgd) J. T. Rice, Jr.
“ ‘Witness:
“ ‘(sgd) Louis R. Gregory’
“Immediately after the execution of the foregoing instrument Mr. Rice took the same to the offices of Local Union No. 485 and delivered the same to Mr. Vernon Bossoit, Business Manager of the Union. Mr. Bossoit testifies that he accepted and honored the instrument. (Ev. p. 12 Is. '20-22) However, according to the by-laws and practices of the Union, no moneys could be actually checked from this special fund until by a vote of the membership in regular meeting such check had been authorized, and the next meeting of the organization was not to occur until Wednesday night, June 3, 1953.
“Wellman’s proceeded to take charge of and perform the funeral services in accordance with the agreement between Mr. Gregory and Mr. Rice. In this connection, however, Mr. Gregory also testifies (Ev. p. 7 Is. 2-9) that he talkéd to the Painters Local on the afternoon of the 30th, which would be after Rice had delivered the letter, and he was assured that Wellman’s would receive check on the next Thursday, the day following the next scheduled meeting. The evidence establishes that the services were rendered and that the charges therefor totaled $907.26.
“On Tuesday, June 2, 1953, plaintiff had issued in this proceeding a garnishment directed to the Local Union, the purpose of which was to seize any money in the hands of the Union belonging to Rice or over which he had control. The answers of the garnishee state that the Union had in its hands and under its control property belonging to Rice in the sum of $92.74, explaining its answer in detail, as follows:
*814 “ ‘Respondent shows that the defendant, J. T. Rice, is a member of respondent organization, which is a labor union under the name of Painters and Paperhangers of America Local Union No. 485 of Shreveport, Louisiana, and that Section 1 of Article 2 of its Charter, By-laws and Organizing Rules provides that a voluntary benefit fund is provided, and that upon the death of a member the members of the Local voluntarily pay into the treasury of the organization $2.50 for each member, which is a voluntary donation to be used by the member for funeral expenses and such other expenses as may be incurred in connection with the death of the spouse of the member.
“ ‘That Mrs. Janie H. Rice, wife of defendant, J. T. Rice, died some days ago, and respondent made an assessment upon its members and collected in the voluntary contributions from the members the sum of $1,000.00.
“ ‘That on May 30, 1953, the said J. T. Rice signed and delivered to your respondent a written request authorizing and directing respondent to pay to Wellman’s Funeral Parlors the sum of $907.26 for funeral expenses of his wife, which said written order was delivered to respondent on the same date, the original of which is attached to this answer.
“ ‘Respondent shows that the above sum has not been paid to the said Well-man’s Funeral Parlors under said order, but believes and alleges that it owes said money under said order to Well-man’s Funeral Parlors.’
“Wellman’s filed an intervention and third opposition claiming prior right to these funds.
“This claim is based on the contention (1) that the letter of May 30, 1953, under the circumstances heretofore outlined, was intended to constitute and did in fact and in law constitute an assignment from J. T. Rice to the Funeral Parlors of the sum of $907.26 out of the $1,000.00 to which Rice had become entitled and with which he had become vested upon the death of his wife the preceding day; and (2) that Wellman’s is entitled to priority in the payment of said amount out of said fund because it has a privilege under Articles 3191 and 3257 of the LSA-Civil Code, for funeral charges.
“Of course plaintiff, Rosenblath, contends that the letter of May 30th was not an assignment but was a mere order or request for the payment of the amount of money named therein and could not become a completed assignment until the meeting of the Union on Wednesday night, June 3rd, when a vote was scheduled to be taken upon the matter and a payment thus authorized. Plaintiff contends that until this event occurred, Rice had not divested himself of control of the fund and the fund was subject to plaintiff’s seizure under garnishment on Tuesday, June 2nd.
“Article 2642 of the LSA-Civil Code provides:
“ ‘In the transfer of credits, rights, or claims to a third person, the delivery takes place between the transferer and the transferee by the giving of the title.’
“Article 2643, LSA-C.C. reads:
“ ‘The transferee is ordy possessed, as it regards third persons, after notice has been given to the debtor of the transfer having taken place.
“ ‘The transferee may nevertheless become possessed by the acceptance of the transfer by the debtor in an authentic act.’
“In view of the foregoing articles, the question is whether the letter of May 30th is sufficient to exhibit a transfer of title from J. T. Rice to the intervenor, Wellman’s. The Orleans Court of Appeal, through McCaleb, J., stated, in the case of Strudwick Funer *815 al Home v. Liberty Industrial Life Insurance Company, Inc., 176 So. 679, 680, that it is the uniform jurisprudence of this state and also of the common law that, in the absence of statute, no special form of words or language is required to constitute a valid assignment, and that ‘any language, however informal, if it shows the intention of the owner of the property or chose in action to transfer it and sufficiently identifies the subject-matter, will be sufficient to vest the property therein in the assignee.’
“In the same case the Court went on further to say that likewise, under Article 2643 of the LSA-Civil Code, the debtor is entitled to notice of the assignment and, while it is held that no particular form of notice is necessary, it is essential that the notice given be such as to inform him that his former- creditor has divested himself of all of his (creditor’s) rights to the thing assigned.
“This case of Strudwick [Funeral Home] v. Liberty Industrial Life Insurance Company is relied iipon by plaintiff in support of his contention in this case and plaintiff’s counsel insists that the facts of that case are, for all practical purposes, parallel to the facts in the case at bar. We cannot agree. In the Str.udwick case the plaintiff therein, an assignee of Mrs. Octavia Roy, beneficiary under a policy issued by the defendant insurance company, obtained a judgment in the District Court (which was reversed on appeal) against the insurance company for the proceeds of the policy which had been issued by it upon the life of one Albert Robertson. The defendant resisted the. claim on the ground that plaintiff did not' have a valid assignment from Octavia Roy, the beneficiary. The instrument in question in that case is set forth in the opinion in the following form:
“ ‘New Orleans, Louisiana
“ ‘Date Sept. 21, 1936.
“ ‘Liberty Ind. Life Ins. Co. of Louisiana
“ ‘Please pay to the order of Strud-wick Funeral Home, Inc. the amount of benefits due under Policy No. 56140B.
“ ‘Beneficiary (signed) Octavia Roy
“ ‘Witnessed:
“ ‘(signed) Mrs. Henrietta Floret
“ ‘(signed) A. J. Gaskin.’
“In analyzing this instrument the Court pointed out that it was merely an order or a request upon the defendant to pay the proceeds of the policy to the plaintiff and is insufficient, because there is nothing contained in the document which discloses that it was the intention of Octavia Roy to transfer her rights as beneficiary under the policy to the plaintiff. But the Court then stated what in our opinion is the 'differentiating situation from the situation in the instant case. We quote the Court’s exact words:
“ ‘It is nothing but a request, made upon the defendant, to pay the plaintiff, and, without explanation hy parol testimony (and none is contained in the 'record), cannot be interpreted to mean other than that the plaintiff was appointed as agent of Octavia Roy to collect the proceeds of the policy.’
“A comparison of the instrument in the cited case and the case at bar will reveal a difference in the instruments themselves, a-difference which may be entitled to some significance. In the letter of Rice to the Local Union in the instant case, the letter shows that the amount of $907.26 set forth therein was ‘for the funeral ■ expenses of my wife, Mrs. Janie H. Rice.’ Significant also, we think, is the sentence which follows, namely, ‘This amount to come out of your donation' insurance plan of which I am a member.’ Certainly such an instrument could not be rea *816 sonably interpreted'by the one to whom it was directed as merely designating an agent to whom the addressee might pay the proceeds of the policy. In addition to the difference between the two instruments themselves, we have in the case at bar considerable evir dence explaining the instrument of May 30th and revealing the obvious intention of all the parties involved. We have already, in the beginning of this opinion referred to some of this evidence. There is additional evidence in the record indicating that this was a general practice with this labor organization and its ipembers belonging to this particular benefit fund. This evidence shows that, while the by-laws of the Union place no restriction upon the use to which such funds can be put by the member who becomes entitled to it, the principal purpose of such funds is to take care of such funeral expenses and that the manner in which the matter was handled in this particular instance conformed to the general practice.
“Aided by the evidence in this particular case, it is clear to us that by executing the instrument of May 30th Mr. Rice intended to transfer to Well-man’s all of his interest in the fund to which he was then entitled up to the amount of the charge for the services which Wellman’s had agreed to perform. We think further that when Mr. Rice took this letter, upon the strength of which he had obtained the obligation of Wellman’s to perform the services, and delivered it to Mr. Bossoit, the Business Manager of. the Union, the Union was effectively notified, and so understood, .that Mr. Rice had transferred his interest in the fund to the amount of the funeral charges. The testimony in the record is to the effect that Mr. Bossoit is the official of the Union to whom such notices are properly given. -Thus, it is our conclu-sion that from that moment forward Rice had 'divested'himself of'his interest in that amount of money in the fund and that when plaintiffs garnishment was served on the Union representative on Tuesday, June 2nd, the Unión no longer had under its' control that amount of money belonging to Rice.
“Plaintiff’s, counsel urges that the instrument of May 30th is in the same category as a check drawn upon a bank, since it is urged that it is no more than a request or an order for the payment of money drawn on a bank depositary. Much is made of that comparison made by the Court in the Strudwick Case concerning the instrument therein involved and the decision of the Orleans Court of Appeal in the case of Spremich v. Somerfield, 166 So. 630, 634. In this latter case the Court was dealing with a letter dated October 30, 1933 which had been addressed to a bank, which letter read as follows:
“ “You have on deposit in the Savings Department of your bank in the name of Mrs. Sadie G. Somerfield, the undersigned, a savings deposit account bearing the No. 35902.
“ “In view of the fact that I have contracted certain obligations for certain purposes, it becomes necessary for me to eventually transfer, as part of said fund, to Mr. Wesley D. Bur-dine of this city, the sum of $500.00 from said deposit account, and on January 5, 1934 you are hereby authorized to pay to Mr. Burdine the sum of $500.00 out of said deposit account, without any further claim on my part thereafter against the said amount accordingly, and you are authorized to issue in the interim, if you desire, any formal certificate or letter necessary to Mr. Burdine to carry the payment into operation for that date.” ’
“Before January 5, 1934 a garnishment was run against the bank under a writ of fieri facias against Mrs, Som-erfield. This fieri facias and' garnishment issued out of' a suit by Mrs. Som-erfield’s landlord, filed January 1, 1934, for the rent alleged due on that date. *817 However, it is shown in the Court’s opinion that on December 21, -1933, Mrs. Somerfield, through her attorney, wrote another letter to the bank in which she withdrew the authority to pay the money to Burdine contained in her letter of October 30, 1933. Of course, under these circumstances, the Court held that the October 30th letter did not defeat the lessor’s seizure under, the garnishment, by holding that, said letter which ordered or authorized the bank to pay the money to Burdine on a future date was not an irrevocable assignment and that the depositor was authorized to withdraw the authority before the time for payment arrived. The Court in the Spremich case likened the instrument to a -check drawn on a bank, saying:
“ 'That the letter was not in the form usually employed when orders are issued to banks to make payment is of no importance whatever. The date of its issuance, the signature of the depositor or drawer, the name of the holder and the date on which it is to be paid are set forth. It was -just such an order as is given by check and until the time for payment arrived the authority given could, at any time, be withdrawn.’
“In both the Strudwick Case and the Spremich Case, the Court appears to have been largely influenced by the provisions of the Negotiable Instruments Law of this State, now LSA-R.S. 7:189, which provides that:
“ ‘A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless,and until it:accepts or certifies the check.’
“The parallel to. the instrument involved in the Spremich Case to a bank check is apparent and the applicability of the Negotiable Instruments Law to it is equally apparent. The instrument in the Strudwick Case, unexplained by any evidence (as the Court said- in that case) was also properly assimilated to a bank check so as to make the Negotiable- Instruments Law applicable. We have heretofore indicated why we think the instrument involved in the case at bar does not fall into such a category, and is to be governed by the articles of the Civil Code, heretofore quoted, instead of any provisions in the Negotiable Instruments Law. It is pointed out by the Court in the ■ Strudwick and in the Spremich cases that prior to the Negotiable Instruments Law an assignment of a. credit became effective as to third persons ‘after notice, has been given to the debtor of the transfer having taken place.’ Under these Civil Code Articles it is unnecessary that there be a formal acceptance on the part of the debtor to make the assignment effective as to him.
“The views we have herein expressed make it unnecessary to decide whether or not intervenor’s claim for a privilege on this particular fund is well-founded.”
The judgment from which appealed is affirmed at-appellant’s cost.