272 So.2d 731 (1973)
BOSSIER BANK & TRUST COMPANY, Plaintiff-Appellee,
v.
NATCHITOCHES DEVELOPMENT COMPANY, INC., Defendant-Appellant.
No. 4063.
Court of Appeal of Louisiana, Third Circuit.
January 29, 1973.
*732 Sam J. Friedman, Natchitoches, for defendant-appellant.
Peters, Ward & Phillips, by Hugh T. Ward, Shreveport, for plaintiff-appellee.
Before SAVOY, CULPEPPER and MILLER, JJ.
SAVOY, Judge.
Plaintiff, Bossier Bank & Trust Company (hereinafter sometimes designated as "Bossier"), instituted this suit against defendant, Natchitoches Development Company, Inc. (hereinafter sometimes designated as "Natchitoches"), for the sum of $2,670.48, representing the amount which it alleges is owed to it by defendant on accounts receivable assigned to plaintiff by Tecton, Inc. (hereinafter sometimes designated as "Tecton"). Said assignment was executed in accordance with the requirements of the Louisiana Assignment of Accounts Receivable Act, LSA-R.S. 9:3101 et seq.
Defendant answered and admitted that it executed an acknowledgment of that particular assignment, and that at the time the acknowledgment was executed (June 9, 1971), defendant did owe to Tecton the sum of $2,670.48, the amount sued for herein. Defendant pleads as a defense that subsequent to the execution of this particular assignment, and prior to making any payment thereunder to Tecton, Natchitoches learned that Tecton had suffered financial reverses and had become insolvent, and as a result thereof, demand was made upon Natchitoches by several material suppliers of Tecton and by laborers for labor done for Tecton. Natchitoches then alleged that it became required to pay the labor and materialmen's charges to prevent labor and materialman's liens from being filed on the property, which was the subject of the construction contract between Natchitoches and Tecton. The defendant contended that since the amounts owed by Tecton to materialmen and laborers exceeded the amount owed by Natchitoches to Tecton, and since these funds were used by Natchitoches to pay possible lien claimants, there were no funds available to pay plaintiff. *733 Defendant further alleges that no valid consideration was received by defendant from plaintiff in exchange for the defendant's executing the assignment.
Following a trial on the merits, judgment was rendered in favor of plaintiff for $2,670.48, as prayed for. From that judgment defendant has appealed to this Court.
The material facts are not in dispute. Natchitoches was the principal contractor on a low rental housing project to be erected in Natchitoches, Louisiana. On December 4, 1970, Natchitoches entered into a contract with Tecton, wherein Tecton as a sub-contractor would do certain work on said project, for a contract price of $107,877.00. The contract provided, as is often the case of contracts such as this, that 90% of all labor and materials which have been placed in position by said sub-contractor were to be paid on or about the tenth of the following month by the principal (Natchitoches), except the final payment which would cover all the remaining contract price after it was determined by inspection that the work had been satisfactorily done.
Tecton, in order to have funds readily available to it, established a line of credit with plaintiff, with the security for the line of Tecton's credit being an assignment of accounts receivable that would be due Tecton by defendant as the sub-contract progressed. Plaintiff caused to be recorded on December 4, 1970, in the public records of Bossier Parish, Louisiana, a Statement of Assignment of Accounts Receivable which reads as follows:

"STATEMENT OF ASSIGNMENT OF ACCOUNTS RECEIVABLE
"December 3, 1970
"Tecton, Inc., represented herein by its President, JERRY DAN WOODALL, duly authorized by resolution of the Board of Directors of said corporation, said resolution on file and of record in the Office of the Clerk of Court, Bossier Parish, Louisiana; has assigned and intends to continue to assign accounts receivable to Bossier Bank and Trust Company in accordance with the Louisiana Assignment of Accounts Receivable Law.
"The assignor is a corporation. The place of business of the assignor at and/or from which is conducted the business or occupation in the course of which accounts to be assigned have been or will be conducted is at 2419 Ashland, Bossier City, Bossier Parish, Louisiana, 71010.
"The assignee is a corporation. The principal place of business of assignee is at 635 Barksdale Boulevard, Bossier City, Louisiana.
"This assignment will continue in effect for two years from date unless rescinded sooner in writing.
 "TECTON, INC.
"By: s/Jerry Dan Woodall,
 President
 "BOSSIER BANK AND TRUST
 COMPANY
 "By: s/V. Dale Gosnell, President
"SWORN TO AND SUBSCRIBED before the undersigned Notary, this 3rd day of December, 1970.
 "s/Charles E. Welsh
 Notary Public"
 (SEAL)
As is readily ascertainable, this Statement of Assignment tracks the language of the form set forth in LSA-R.S. 9:3103, "Statement of Assignment".
Under letter dated June 9, 1971, Bossier wrote Natchitoches as follows:
 "June 9, 1971
"Natchitoches Development Company
"Natchitoches, Louisiana "Dear Sir:
"By execution of assignment of Accounts Receivable said assignment being duly recorded, *734 Tecton, Inc., has assigned to Bossier Bank and Trust Company its accounts receivable. This is to notify you, that you are to make all payments owed to Tecton, Inc. to Bossier Bank and Trust Company, 635 Barksdale Blvd., Bossier City, Louisiana 71010.
"Attached you will find the statement of Tecton, Inc., indicating the balance now owed. Please sign the attached copy of this notice, indicating that you have received notice of the assignment and verifying that the amount owed Tecton, Inc. is true and correct and that it has not been paid. After signing, please return the copy to Bossier Bank and Trust Company.
 "Sincerely,
 "s/Edward R. Glover
 "Bossier Bank and Trust
 Company
 "Edward R. Glover
 "Vice President
 "s/Jerry Dan WOODALL
 "Tecton, Inc.
 "Jerry Dan Woodall
 "President
"Acknowledgment is made of notice that Tecton, Inc. has assigned its accounts receivable to Bossier Bank and Trust Company. That all accounts now owed to Tecton, Inc. will be paid to Bossier Bank and Trust Company. The balance now owed by Natchitoches Development Company, Inc. is $2,670.48.
 Natchitoches Development
 Company
 "By: s/James A. Ford."
Attached to the above letter was the statement of Tecton to Natchitoches showing a total for work done and completed to be $2,967.20, and showing "90% payment due$2,670.48." As can be seen, it was acknowledged by Natchitoches that at the time of this notice of assignment, Natchitoches owed Tecton $2,670.48. Evidence in the record reveals that on at least one prior occasion, plaintiff had, under date of May 28, 1971, written a similar letter, which was similarly acknowledged by Natchitoches, stating that the balance owed as of that time was $11,708.55. The record further reveals that this amount was paid to Bossier Bank and Trust Company shortly after May 28, 1971. This was done by Natchitoches issuing a check jointly payable to Tecton and Bossier.
Mr. R. L. Larsen, who is Secretary-Treasurer of Natchitoches (and also vice president of Builders Service, Inc., which had a similar arrangement with Tecton and Bossier Bank), testified that on or about July 4, 1971, Mr. Jerry Woodall, the President of Tecton, revealed to him that he was in extremely bad financial shape, and it developed that the contract between Tecton and Natchitoches would have to be cancelled. Subsequently, Natchitoches paid several debts owed by Tecton to various others, to avoid what it foresaw as a probability of materialmen's liens being filed on the property. One of these, paid on July 28, 1971, was Builders Supply Company, Inc., which had supplied $1,236.08 worth of materials to Tecton, and Natchitoches paid $978.00 in settlement of this account. Also on July 28, 1971, Natchitoches agreed to pay the K & M Construction Company, Inc. the sum of $11,216.40 as payment for products furnished to Tecton. A materialman's lien was actually filed on July 26, 1971, by Louisiana Industries, a trade style of Texas Industries, Inc., in the amount of $6,645.92. On July 30, 1971, an authorization to cancel said lien was filed, based on the fact that Natchitoches had made arrangements to discharge this obligation which was admittedly primarily that of Tecton. Also in the record is an agreement dated September 10, 1971, whereby Natchitoches agreed to assume responsibility for the account of Acme Cement Products Company, Inc., with Tecton, said account being in the amount of $6,908.74. Also introduced into evidence was the following letter from *735 Mr. Larsen to the Bossier Bank & Trust Company:
"29 July 71
"Att. Mr. John Jeter "Bossier Bank and Trust Co. "635 Barksdale Blvd. "Bossier City, La.
"Re: Tecton, Inc.
"Gentlemen:
"This is to advise that our company intends to release Tecton, Inc from their contract with us on the Ruston Housing Project La. 54-3. We in turn will agree to pay off all outstanding bills and obligations incurred as a result of the contract. We understand there are two notes due your bank in the amount of $2,458.37 and $6,793.92 which we will assume and pay off within 90 days.
"As a related matter the contract between Tecton, Inc. and Natchitoches Development Company, Inc. will also be dissolved and Natchitoches Development Company, Inc. will assume a note in the amount of $1,890.00, which is now outstanding with your bank.
"Sincerely
"BUILDERS SERVICE, INC.
"s/R. L. Larsen."
Mr. Larsen testified, however, that the intentions as set forth in the above letter changed after the latter was sent to plaintiff, and no amount had actually been paid to plaintiff relative to either Natchitoches or Builders Service, Inc.
The Louisiana Assignment of Accounts Receivable Law is comparatively recent legislation, having been enacted by Act. No. 293 of 1952, and amended by Acts Nos. 511 and 725 of 1964. It appears obvious that the purpose of this Act is to enable a debtor to use accounts receivable as security to such an extent that was not possible before the passage of this Act. This Act sets out in detail the procedure to be used therein, and this procedure was followed to the letter by plaintiff.
Defendant contends that the type of debt involved in this case is not an accounts receivable as that term is used in the Accounts Receivable Law. LSA-R.S. 9:3101, "definitions" provides:
"(1) `Account receivable' or `Account' means and includes any indebtedness or part thereof due to, arising out of, or acquired in connection with any business, profession, occupation or undertaking of the assignor, other than indebtedness due to, arising out of, or acquired in connection with claims in tort or indebtedness evidenced either by a promissory note or notes or by any other instrument creating a security right in said indebtedness." (Emphasis ours.)
We feel that appellant's contention is untenable in view of the language of the statute in defining an accounts receivable, and by virtue of the fact that the only debts excluded from the Act are claims in tort, or indebtedness evidenced by promissory notes or other instruments creating a security right in said indebtedness. We feel it is perfectly clear that the legislature intended that the type of account with which we are concerned here would be embraced within that definition. Further, the factual situation herein could very likely be a major type of activity intended to be covered by the Act. This Act provides lending institutions with a more clearly defined area of security by assignments of accounts in construction projects where the borrower does not own the property, and thus could not grant a mortgage of security.
Appellant further contends that it was entitled to disregard these assignments which it had acknowledged in writing, and pay debts of Tecton to materialmen and suppliers because of the possibility of labor and materialman's liens being filed on the property. Of course, this disregards the *736 plain language of the Act, as spelled out in LSA-R.S. 9:3102, as follows:
"Every assignment of an account receivable evidenced in writing and made for a valuable consideration within the effective period of a statement of assignment made and filed for record as hereinafter prescribed shall be valid and shall be deemed and held to have been fully perfected at the time such assignment is made, notwithstanding that the debtor be not notified of or does not assent to such assignment; and thereafter no subsequent assignee, pledgee, purchaser or transferee of such account or other person claiming or to claim under, through or against the assignor, and no existing or future attaching, garnishing, judgment, execution, levying or other creditor of the assignor, except a creditor who through judicial proceedings shall have perfected a superior lien on such account prior to the time of such assignment, shall or can have or be entitled to any right, title, lien or interest in or to such account superior to or in diminution of that of such assignee therein or thereto." (Emphasis ours.)
In our opinion, this section means what it says, and assignments executed in accordance with this Act, and duly acknowledged in accordance with the provisions of the Act shall have precedence over any other claim, unless a creditor through judicial proceedings has perfected a superior lien prior to the time of such assignment. If this were not the case, it would practically negate the purpose of the Assignment of Accounts Receivable statute. If the debtor can ignore the assignment for any reason, the assignee cannot be secure in his relationship with the assignor. Further, relative to the effect of notice, LSA-R.S. 9:3107 provides:
"The rights of an assignee against the account debtor shall be subject to any dealing by such debtor with the assignor or any other assignee or other successor in interest of the assignor until the account debtor receives notice in writing of the assignment of the particular account of which he is debtor from or on behalf of the assignee or the assignor, and in any case in which the debtor of an account receivable not being notified of the assignment of the account made in compliance with the provisions of this Part and acting in good faith makes payment of such account in whole or in part to the assignor, or to a subsequent purchaser or transferee of such account who shall have notified the debtor of such purchase or transfer to such subsequent purchaser or transferee, then the debtor shall to the extent of such payment be exonerated of liability to make payment to the first assignee of the account, but the person to whom such payment is made shall be accountable and liable to the assignee for such sums received by him." (Emphasis ours.)
The provisions of the Assignment of Accounts Receivable law quoted hereinabove are clear and specific. There is no dispute but that defendant had notice in writing of the assignments to plaintiff by Tecton before it commenced its unilateral dealings with materialmen and Tecton, by which it assumed and discharged Tecton's indebtedness. Consequently, such dealings, under the express provisions of the statute, simply can have no effect to the prejudice of plaintiff.
Appellant also contends that there was no consideration received by Natchitoches for its acknowledgment of the assignment and its obligation to honor the assignment. Of course, a short answer to this is that Natchitoches, as a principal contractor, does have a vital financial interest in the success of any sub-contractor on the project of the principal. The fact that the principal assists the subcontractor's financial interests also benefits the principal. Further, the Act does not specify what requirements, if any, there are as to consideration.
*737 Appellant complains that the construction of the Act, as urged by plaintiff and as set forth in this opinion, causes a hardship upon a principal contractor when a subcontractor becomes insolvent or unable to complete his contract on a building contract. Several remedies suggest themselves, but that is not the question before us. In this case, plaintiff followed the Louisiana Assignment of Accounts Receivable law to the letter. Defendant acknowledged the assignment in writing, and the lending institution accordingly acted thereon. Defendant cannot now come in and urge the invalidity of the assignment on the basis of debts of the assignor that defendant absorbed for reasons of its own.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.