WATSON, Judge.
Plaintiff, Central Bank, a Louisiana bank, is the holder of a promissory note executed by L. Milton Hale on behalf of Hale Electric Company in the face amount of $28,562.79. A credit of $250 dated 3/17/72 and a balance of $28,312.79 are indicated on the reverse of the note. The note states that it is secured by: “Assignment of Work Contract in the amount of $149,-625.00 dated 7-31-70 for Federal Housing Project # LA-54-3, Ruston, La.” (P-2). An act of assignment was executed on August 10, 1970, by Milton Hale d/b/a Hale Electric Company and by Mr. George Bagley on behalf of plaintiff, Central Bank (sometimes also referred to in the record as “Central Savings Bank & Trust Company”). By the terms of this assignment, Milton Hale d/b/a Hale Electric Company assigned all funds due him under a contract with Builders Service, Inc., the defendant, to Central Bank. The contract is described as:
“Electrical work Contract for Housing Project LA-54 — 3, Ruston, La., in the Am’t. of $149,625.00, Dated July 31, 1970. Signed for Builders Service Inc. by R. L. Larson.” (P-1).
Receipt and acceptance of the assignment to Central Bank is shown by the signature of R. L. Larson on behalf of Builders Service, Inc.
Plaintiff bank contends that, after the defendant, Builders Service, Inc., accepted the act of assignment, defendant then made payments of $8,420.83 on the contract to Milton Hale in violation of the terms of the assignment, and plaintiff asks for judgment in that amount against Builders Service Inc. Defendant, Builders Service, Inc., contends that the payments in question were made with the knowledge and consent of plaintiff ; that plaintiff entered into an oral agreement authorizing these payments; and that these payments were necessary for Hale to receive supplies from Beco, Inc. (also shown in the record as Beico, Inc.) and to complete the job in question. It is also contended by defendant that there was consideration for this oral modification of the act of assignment since it was intended to allow Hale to complete his job and pay plaintiff bank the balance owed.
The trial court held that the plaintiff was estopped from collecting the amount due from Builders Service, Inc. under the terms of the assignment, because, after the assignment had been executed, the bank loaned Mr. Hale an additional $7,500. Further, the trial court found:
“. . . that the Central Bank, through Leonard O. Garlington, acquiesed in and had full knowledge of the payments made by Builders Service directly to Hale. The court rejects the testimony of Leonard O. Garlington.” (TR. 10).
Therefore, the trial court dismissed plaintiff’s suit, and plaintiff has appealed from this adverse judgment.
The plaintiff bank contends in brief that the trial court erred:
“(1) In allowing any parol evidence to be admitted which would tend to alter or modify the written act of assignment;
“(2) In holding that Central Bank’s loan officer acquiesced in the payments by Builders Service to Hale Electric contrary to the act of assignment when each witness in the case testified to the contrary;
“(3) In holding Central Bank was es-topped to enforce the act of assignment when estoppel is an affirmative defense and must be pled;
“(4) In holding that a loan of Central Bank to Hale Electric constituted estoppel when such a loan could in no way be prejudicial to or impair the rights of Builders Service.”
Defendant, Builders Service, Inc., contends that the trial court was correct, arguing that Central Bank holds other security against Hale and should have proceeded *532 directly against Hale rather than defendant. Further, defendant argues that the bank’s only chance of being paid its debt was to allow Hale to have the operating funds which had been assigned to the bank. Also, it is argued that Beco, Inc., Mr. Hale’s supplier, was a customer of the bank and therefore the bank knew payments had been made directly to Hale and Beco.
On trial of the matter, it was stipulated that Central Bank held the note from Mr. Hale which formed the basis of the assignment. Mr. Richard L. Larson, Vice-President of Builders Service Inc., testified that his company was the general contractor on a housing project in Ruston, Louisiana, LA-54 — 3, which was accepted in November, 1971 and that Milton Hale d/b/a Hale Electric Company was the subcontractor for the electrical work on that job. He testified that he signed the act of assignment on behalf of his company and also signed a contract with Milton Hale for the electrical work. He testified that checks in the amount of $8,421.13 were made directly to Hale Electric after execution of the act of assignment. He stated that the first of these payments was made on October 15, 1971, and' that the payments were made to Hale to enable him to meet his payroll.
Mr. Leonard O. Garlington, pastor of Rock Hill Baptist Church in West Monroe, Louisiana,, testified that he was employed by the bank for 18 years, resigning on March 15, 1972, and was Vice-President and Branch Manager for the last 8 years of his employment. Commencing in July or August of 1970, he made loans to Milton Hale in connection with the subcontract on the housing project in Ruston to enable Hale to pay his labor. The loans were secured by the act of assignment from Builders Service, Inc. and other personal collateral. He had no knowledge that payments wfere being made by Builders Service directly to Hale until the job had been completed. Garlington stated that the bank held, in addition to the assignment, a second mortgage on Hale’s home and office building and some collateral on his equipment. Garlington also noted the credit of $250 shown on the reverse of the note. Garlington testified that he talked on the telephone to Larson many times about the job and the contract when the bank failed to receive money from Builders Service and that Larson assured him there was enough money due Hale under the contract to cover the bank loan. Gar-lington testified that the bank did not proceed directly against Hale because they thought it would be difficult if not impossible to secure a complete payoff from him. He said that it is customary in the banking business to have an act of assignment made prior to a loan being made on a particular job and that was why the act of assignment was dated prior to the note. He testified that the note in question represented an accumulation of funds advanced on the particular job with Builders Service and did not represent other debts owed by Hale to the bank.
Richard L. Larson testified that the first three payments made by Builders Service, Inc. on the electrical subcontract with Hale Electric were made directly to Hale. Photocopies of these three checks were introduced into evidence as part of D-3 and show payments to Hale Electric Company as follows:
10-6-70 Estimate #1 1,341.00
11-6-70 Estimate #2 11,727.53
11-16-70 Estimate #3 9,093.48
Mr. Larson testified that he understood from both Garlington and Píale that the proceeds from .these checks had been applied to Hale’s note. Larson testified that, after the first three checks were issued, Hale’s supplier, Beco, Inc. of Monroe, advised Larson that Hale had an unpaid account with them of some $20,000. At that time, Builders Service, Inc. had Norman Electric Company survey the job to determine if Norman Electric Company should finish the job. However, Norman Electric Company advised Builders Service that it would cost an additional $10,000' for Norman to take over the job and Builders *533 Service therefore decided to continue with Hale. At this time, according to Larson, Garlington agreed on behalf of Central Bank to continue loaning money to Hale to meet his payroll. Other checks were then issued by Builders Service, Inc. as follows:
Hale Electric Co. & Beco Inc. 1/20/71 11,885.65
Hale Electric & Beco Inc. 1/20/71 14,000.00
Hale Electric & Central Bank 1/20/71 7,400.00
Hale Electric Co. & Beco, Inc. 2/19/71 10,000.00
Hale Electric & Central Bank & Trust Co. 2/20/71 3,000.00
Hale Electric & Beco, Inc. 3/19/71 9,000.00
Hale Electric & Central Bank & Trust Co. 3/19/71 3,286.53
Central Savings Bank & Hale Electric Co. 4/23/71 3,000.00
Hale Electric & Central Bank & Trust Co. 4/26/71 3,000.00
Hale Electric & Beco, Inc. 4/28/71 9,000.00
Hale Electric & Internal Revenue Service 5/12/71 3,653.96
Hale Electric & Central Bank & Trust 5/18/71 6,000.00
Hale Electric & Beco, Inc. 6/14/71 8,100.00
Hale Electric & Central Bank & Trust Co. 6/28/71 2,364.27
Hale Electric & Beco, Inc. 7/14/71 2,056.00
Hale Electric & Central Bank 7/14/71 10,100.00
Hale Elec. Co. 10/15/71 721.92
Hale Electric Co. 10/21/72 1,400.55
Hale Electric Co. 10/28/71 901.80
Hale Electric Co. 11/ 4/71 702.30
Hale Electric Co. 10/21/71 1,400.55
Hale Elec. Co. 11/19/71 1,674.57
Hale Electric Co. 11/26/71 1,188.10
Hale Electric Co. 11/30/71 431.34
It is the last eight payments, totaling $8,421.13 which apparently form the basis for this suit. From the above, it is apparent that Builders Service, Inc. made checks payable to Hale and the Central Bank to a total of $38,150.80. However, the act of assignment assigns Central Bank the whole of Hale Electric Company’s receipts on Housing Project LA-54-3 in Ruston or $149,625.
According to Larson, he learned in May or June of 1971 that the Central Bank had ceased loaning Hale the money to meet his weekly payroll. Then in June, Garlington went on vacation and the bank, in his absence, honored Hale’s payroll certificates for an additional $10,000. In July, Larson was advised by Beco that Hale would need $20,000 more material for the job than they had previously estimated. At that time, it apparently became clear to all parties that the money available to Hale from the contract would not take care of his supplier as well as the bank. Builders Service had another survey made by Norman Electric and were again advised that it would be cheaper to have Hale complete the job.
Larson admitted on cross-examination that his initial understanding of the act of assignment was that the Central Bank would handle all the funds to be paid to Hale. It is apparent that Builders Service paid Hale’s supplier directly and also made payments to him directly to meet his payroll in order to insure that the electrical work was finished. Larson admitted that Beco, Inc. was paid in full and that Hale’s labor was paid in full. As Larson testified in regard to the payroll:
“We told them that we were going to have to finish the job, and if they wouldn’t carry the payroll, obviously for good reasons, we had to do it.” (TR. 67).
Clearly, these direct payments were in violation of the act of assignment.
Hale testified that all money paid to him in connection with the job was paid out for his materials, his labor or to the Central Bank. Hale admitted that the amount due and owing on his note at the Central Bank is $28,312.79, and that the whole of that amount was paid to his labor on the electrical contract with Builders Service, Inc. except for a $1,200 winch truck which was also used on that job. Hale also testified that he said nothing to the bank about the payments that were made directly to him.
It is apparent that Builders Service, Inc. made the payments in the manner that they did solely to protect themselves in the completion of the electrical subcontract. As Larson admitted, it would have cost Builders Service, Inc. a substantial premium to have the work performed by another *534 subcontractor when Hale became involved in financial difficulties.
The act of assignment was not ambiguous ; Builders Service, Inc. could have protected itself by making payments due Hale directly to the bank. Since defendant failed to do so, it is responsible for the arhount lost by the bank as a result of diverting funds to Hale and Beco, Inc. The credibility of the witnesses is not at issue here, since the liability of defendant, Builders Service, Inc., is clear on the basis of its own employee’s admissions.
The law applicable to this situation- is the Louisiana Assignment of Accounts Receivable Law, LSA-R.S. 9:3101-9:3110. There is no contention that the statute was not followed.
A situation very similar to the present case was presented in Bossier Bank and Trust Co. v. Natchitoches Dev. Co., Inc., 272 So.2d 731 (La.App. 3 Cir. 1973), where this court concluded that the contractor, who paid sums to his subcontractor in violation of a valid assignment, was liable to the financial institution to whom the accounts had been assigned.
The terms of the assignment are clear in the present case. As the court pointed out in American Bank & Trust Company v. Straughan, 248 So.2d 73 (La.App. 1 Cir. 1971); application denied, 259 La. 746, 252 So.2d 450:
“There is no dispute herein requiring resort to any rule of construction, nor are the rights of. any third persons involved.” 248 So.2d 78.
We find no reason why plaintiff should not recover from defendant under the facts presented and the applicable statutes and jurisprudence; to deny recovery was error.
 The trial court was also in error in holding the plaintiff estopped to assert its demand. Estoppel is an affirmative defense which must be pleaded. LSA-C.C. P. art. 1005. There is no such plea in the record. Additionally, we do not find any elements of estoppel in the action of Central Bank in making an additional loan to Hale to be used in connection with the subcontract.
The amount due Central Bank but paid by Builders Service, Inc., to Hale is established by the record as $8,420.83.
Therefore, for the reasons assigned, the judgment of the trial court is reversed and it is ordered, adjudged and decreed that there be judgment herein in favor of plaintiff, Central Bank, and against the defendant, Builders Service, Inc., in the sum of $8,420.83, together with legal interest from date of judicial demand until paid and all costs of these proceedings.
Reversed and rendered.