370 So.2d 1291 (1979)
The PEOPLES BANK AND TRUST COMPANY, NATCHITOCHES, Louisiana, Plaintiff-Appellee,
v.
Lonnette C. HARPER, d/b/a Harper's Steak House, et al., Defendant-Appellant.
No. 6944.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1979.
*1292 Watson, Murchison, Crews, Arthur & Cockern by R. Raymond Arthur, Natchitoches, for defendant-appellant.
Gravel, Roy & Burnes, Robert L. Royer, Alexandria, Whitehead & McCoy, Natchitoches, James D. Kirk, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, SWIFT and DOUCET, JJ.
DOUCET, Judge.
The Peoples Bank & Trust Company, Natchitoches, Louisiana, instituted this suit against Lonnette C. Harper and Leonard F. Harper to obtain payment on a promissory note with a face amount of $8,425.08, dated January 11, 1977 and signed by Lonnette C. Harper. Progressive Savings & Loan Association was joined as a defendant on the theory that it was also liable to the bank for having wrongfully violated a security interest that the bank had acquired in connection with the note. The Harpers did not appear at the trial of this matter and a default judgment was rendered against them for $6,900.77, the remainder due on the note, on August 2, 1977. They have not appealed. After the trial on the merits, a judgment was rendered against Progressive Savings & Loan Association for the same amount. From that judgment, it has appealed.
The issue before this court is whether or not Progressive Savings & Loan Association did in fact violate a valid security interest held by the bank in connection with the note such that it is liable to the bank.
The facts are not in dispute. On January 11, 1977, Lonnette C. Harper obtained a loan with a principal amount of $7,000.00 from the Peoples Bank & Trust Company and in conjunction therewith agreed to convey a security interest in a savings certificate issued by Progressive Savings & Loan Association. The certificate, worth in excess of $10,000.00 at that time, was owned by Mrs. Harper and her three children, Karen, Carlton and David Golden, and had been issued in all of their names. Mrs. Harper did not have the certificate in her possession at the time that the loan was made, however, the president of the bank with whom she dealt, Walter C. Jones, testified that some unsuccessful efforts were made to obtain possession of the certificate at a later time, as it was his usual practice in such cases to retain possession of the certificate until the loan was repaid.
In addition to the promissory note, Mrs. Harper signed a document, prepared by the bank, and styled "ASSIGNMENT OF SAVINGS/TIME *1293 DEPOSIT ACCOUNT."1 The following day, January 12, 1977, the bank sent this instrument to the Savings & Loan. Naomi R. Terrell, its Secretary-Treasurer, signed an acknowledgment at the bottom of the instrument, stating that the signature on it compared correctly with the one in its files, that the then present balance was $10,048.03, and that the assignment had been properly recorded in its records. In addition to executing the acknowledgment, Ms. Terrell made a notation on the account card for account number 3352(14), which read:
"1/12/77 Pledged to Peoples Bank & Trust Co." The savings and loan then retained a copy of the instrument and returned the original to the bank.
On February 1, 1977, Mrs. Harper and her children made a withdrawal from the savings and loan by presenting the savings certificate and following the procedure prescribed by the institution. According to the testimony of Mr. James H. Cobb, president of the savings and loan, a withdrawal cannot be made without presenting the savings certificate. There were subsequent withdrawals made in the same manner. The last one was made on April 11, 1977, leaving a balance of $1,043.08, which the bank sequestered in connection with this suit.
It is the contention of the savings and loan that the bank had attempted to secure a pledge of the savings certificate but that the pledge was not perfected because of the bank's failure to obtain possession of it. The bank, on the other hand, concedes that there was never a valid pledge, but maintains that there was a valid assignment, sufficient to secure an interest in the funds in the account, and that the savings and loan violated that interest by allowing the withdrawals to be made without its knowledge and consent.
La.C.C. arts. 2642 and 2643 govern the assignment of incorporeal rights.

*1294 "Article 2642. In the transfer of credits, rights or claims to a third person, the delivery takes place between the transferrer and the transferree by the giving of the title."
"Article 2643. The transferee is only possessed, as it regards third persons, after notice has been given to the debtor of the transfer having taken place.
The transferee may nevertheless become possessed by the acceptance of the transfer by the debtor in an authentic act."
No particular form is required for the notice spoken of in the latter article. Strudwick Funeral Home v. Liberty Ind. Life Ins. Co., 176 So. 679 (La.App. Orl. Cir. 1937); Rosenblath v. Rice, 73 So.2d 812 (La.App. 2nd Cir. 1954); In re Pan American Life Insurance Company, 88 So.2d 410 (La.App. 2nd Cir. 1956).
In Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956), our Supreme Court said the following:
"The contracts of pledge and assignment are entirely different and produce varied legal results. Assignment or transfer of credits and other incorporeal rights is a species of sale and is treated as such in our Civil Code, being found in Chapter 12 of Title VII ("Of Sale"). Article 2642 of the Civil Code provides that delivery of an assignment takes place as between transferrer and transferee by the giving of title. Accordingly, a vesting of title in the transferee is essential to an assignment. See Strudwick Funeral Home v. Liberty Ind. Life Ins. Co., La.App., 176 So. 679 and authorities there cited."
"On the other hand, a pledge is another sort of contract, having characteristics completely diverse to those of an assignment. It is dealt with under a separate title (Title XX) of our Code and is essentially a contract of security, being defined in Article 3133 as `a contract by which one debtor gives something to his creditor as a security for his debt'. This is the antithesis of an assignment (in which title passes) for, in the contract of pledge, the debtor retains the title of the thing which he places, either actually or constructively, in the hands of his creditor as security for the payment of the debt. See Article 3166 of the Civil Code. Hence, it is impossible to have an assignment and a pledge of the same thing at the same time."
It is implicit from the above language that the granting of those rights accorded a pledgee under the law does not comprise a "giving of the title" within the meaning of Article 2642 of our Civil Code. That reasoning is harmonious with statements found in all of the cases which discuss the notice requirement of Article 2643 to the effect that while no particular form of notice is required, it is essential that the debtor be informed that his former creditor has divested himself of all rights to the thing assigned. See, for example, Strudwick Funeral Home v. Liberty Ind. Life Ins. Co., supra; Rosenblath v. Rice, supra.
A careful examination of the instrument in this case shows that the rights granted by it were no greater than those granted to a pledgee under Civil Code Article 3157. The bank had no right to the funds until after the loan matured and was not otherwise paid. The bank errs in its assertion that it "owned" the funds held by the savings and loan. The cases it cites do not support such a contention.
In all of the cases cited by counsel for the bank, there was a transfer of the right to receive funds in full ownership as they accrued, until such time as the indebtedness was paid. In Dauzat v. Simmesport State Bank, 167 So.2d 681 (La.App. 3rd Cir. 1964), payments due under a construction contract were assigned, giving the assignee a present right to receive the funds and apply them to the indebtedness. Bossier Bank & Trust Company v. Natchitoches Development Company, Inc., 272 So.2d 731 (La.App. 3rd Cir. 1973), dealt with an assignment under the Louisiana Assignment of Accounts Receivable Act, LSA-R.S. 9:3101, et seq., special legislation, designed to regulate a particular type of assignment, which is not applicable here.
With due respect to the learned trial judge, we believe that he erred in finding *1295 that an assignment was made under these circumstances, and must, therefore, reverse.
Furthermore, even if our conclusions as to the applicable law were otherwise, we would, nevertheless, be constrained to reverse. After carefully examining the testimony in the record before us, we believe that contrary to its assertions after the fact, what the bank intended to create in this situation was a pledge. The bank's president testified that he normally retains possession of the savings certificates in cases such as this one and that he, in fact, attempted to obtain possession of the certificate in this case.
The testimony of all of the witnesses acquainted with the customary secured lending practices in the Natchitoches area shows that transactions such as the instant one are ordinarily in the form of pledges and understood to be such. It is apparent from the notation made by Mrs. Terrell on the account card that the savings and loan considered the instrument evidence of a pledge of the savings certificate.
The use of the word "assignment" does not mandate a finding that the the instrument was an assignment and not a pledge. In Naquin v. The American Bank of Luling, 347 So.2d 332 (La.App. 4th Cir. 1977), the court concluded that despite the use of the word "assignment" the conveyance of rights to a savings account was a pledge.
In light of these circumstances, we believe that the bank attempted to perfect a pledge but did not do so, because it did not have the requisite possession of the pledged property. La.Civil Code Article 3152.
For the above reasons, the judgment of the district court, ordering defendant-appellant, Progressive Savings & Loan Association to pay to plaintiff-appellee the sum of SIX THOUSAND NINE HUNDRED AND 77/100 ($6,900.77) DOLLARS, plus interest and attorney's fees is reversed. All costs of this appeal are assessed against plaintiff-appellee.
REVERSED.