McBRIDE, Judge.
On October 7, 1953, Mrs. Ethel Howell, wife of David H. Crichton, purchased the property known as 517-19 Constantinople Street. She gave her vendor (Dr. Nathan H. Polmer) a vendor’s lien mortgage thereon for $7,250 (the credit portion of the sale) which secured her note for said amount payable in monthly installments.
David H. Crichton subsequently died, and his widow then brought a proceeding against his heirs (No. 387-508 of the docket of the Civil District Court for the Parish of Orleans entitled: Ethel Howell Price Crichton v. Allan Joseph Crichton et al) to have the above-mentioned property declared to be her separate and paraphernal property. Mrs. Crichton was successful in recovering judgment decreeing the property to belong to her in her separate and para-phernal right, and on December 28, 1961, her attorney obtained an order taxing against 517-19 Constantinople Street as costs in proceedings No. 387-508 his attorney’s fee of $878.98 for having represented Mrs. Crichton.
Mrs. Crichton, having failed to keep up with her payments on the note, Dr. Polmer, on January 23, 1962, through his nominee, M. Norvell, in the instant proceedings sought executory process to enforce payment of the $6,034.77 balance due, with interest, attorney’s fees and costs. Under a writ of seizure and sale issued in this execu-tory proceeding, the then Civil Sheriff for the Parish of Orleans (Lou J. Scanlon) seized and took into his possession said immovable property, and on April 5, 1962, publicly sold the same for the sum of $2,700. After deducting the costs and charges of the sale, plus the amount of certain city and state taxes, there remained in the hands of the Civil Sheriff to be credited to the writ of seizure and sale the sum of $2,373.39.
On or about April 15, 1962, while the net proceeds of the sale still were in the hands of the Civil Sheriff, Mrs. Crichton’s attorney presented to the Civil Sheriff’s attorney a certified copy of the order of court which taxed his attorney’s fee of $878.98 against the property; whereupon the Sheriff’s attorney approved said order and the Sheriff paid over to Mrs. Crichton’s attorney, out of the $2,373.39, the amount of his attorney’s fee. Subsequently the present Civil Sheriff, Harold J. “Tookie” Gilbert, filed a motion in the instant proceedings setting forth the above facts and M. Norvell, the foreclosing creditor, and Mrs. Crichton’s attorney were ordered by the court to show cause why the attorney should not be ordered to return the $878.98 to the Civil Sheriff. Mrs. Crichton’s attorney interposed several exceptions to the rule which need not be detailed.
After a hearing the court made the rule absolute, and accordingly ordered the return of the $878.98 to the Civil Sheriff and Mrs. Crichton’s attorney has appealed.
If the lien for the attorney’s fee did not prime the amount held for the account of the mortgage creditor, the Sheriff was clearly without right to satisfy the amount of the attorney’s lien as the net proceeds of the sale were insufficient to cover the mortgage writ of seizure and sale, and the present Civil Sheriff may, under the law, bring the rule to reclaim the amount erroneously paid him else he, himself, might expose himself to personal liability to the mortgage creditor to whose detriment the payment was made. The codal law is very plain that every payment presupposes a debt; what has been paid without having been due is subject to be reclaimed; he who has paid through mistake, believing himself to be a debtor, may reclaim what he has paid. LSA-C.C. arts. 2133, 2302.
*623 Appellant contends that the money he received was not paid in error as his was a debt secured by lien on the property priming Dr. Palmer’s vendor’s lien mortgage. Appellant cites several articles of the Civil Code and one article of the Code of Civil Procedure, but we deem the cited articles not pertinent and unworthy of mention, except LSA-C.C. art. 3267, upon which appellant places so much emphasis. That article reads as follows:
“If the movables of the debtor are subject to the vendor’s privilege, or if there be a house or other work subjected to the privilege of the workmen who have constructed or repaired it, or of the individuals who furnished the materials, the vendor, workmen and fur-nishers of materials, shall be paid from the price of the object affected in their favor, in preference to other privileged debts of the debtor, even funeral charges, except the charges for affixing seals, making inventories, and others which may have been necessary to procure the sale of the thing.” (Italics ours.)
It is argued to us that appellant’s services to Mrs. Crichton in the other suit removed a cloud from the title by clearing up any question as to the status of the property and that such services were therefore necessary “to procure the sale of the thing.”
Whatever services the attorney may have rendered his client, Mrs. Crichton, did not enure in any manner to the benefit of the mortgage creditor nor were such services needed to bring about the judicial sale of the property under the writ of seizure and sale. The services were rendered entirely to Mrs. C-richton and are in no manner connected with or related to the mortgage or with the public sale. The charges necessary to the sale of the thing, to which immovables subject to the vendor’s privilege must contribute, are those without which the sale could not be made. Such are the fees of sheriff, clerk, notary, and appraiser with the syndic’s commission. Marsh v. His Creditors, 11 La.Ann. 469. It would make no difference to the mortgage holder whether the property was separate and paraphernal or whether it belonged to the community, as, in either event, he could bring the executory proceedings against Mrs. Crichton, notwithstanding her husband was deceased. If the property belonged to her in her paraphernal right, she alone was the proper defendant. If the property belonged to the community, the mortgage creditor had the right granted by law of proceeding against her. Art. 2671, LSA-C.C.P., provides that when a mortgage or privilege has been granted on community property to secure an obligation of the community, and one of the spouses in community has died subsequently, an executory proceeding to enforce the mortgage or privilege may be brought against the surviving spouse in community. It is not necessary to make the succession representative, heirs, or legatees of the deceased spouse parties to the proceeding.
The net avails of the executory proceeding which the Civil Sheriff had in his hands belonged to the mortgage creditor in toto as the amount thereof was less than that which was due on the mortgage, and the attorney who has but a claim on a lien which was inferior to the mortgage was not entitled by law to any of the proceeds. Whereas the Civil Sheriff paid the attorney’s lien in error, erroneously believing it to prime the claim of the mortgage creditor, he has a right to reclaim the payment.
Appellant argues that Dr. Polmer is estop-ped from claiming the $878.98 because he was aware that Mrs. Crichton was in a poor financial condition, and that he was also cognizant that the title was being “cleared” and that he had agreed to “hold off” foreclosure proceedings in order to allow appellant an opportunity to clear the title and to sell the property. It is argued that Dr. Polmer’s said agreement was relied upon by appellant.
 We cannot consider such a plea for at least two reasons: first, because un *624 der our law estoppel must be specially pleaded to be effective and cannot be raised by plaintiff in brief and in argument. Young v. New Orleans Public Service, Inc., La. App., 35 So.2d 881. There is no special plea of estoppel before us. Secondly, the plea of estoppel against Dr. Polmer cannot be used as a weapon to defeat the right of the Civil Sheriff, who is a mere stakeholder of the funds, to seek the return of money erroneously disbursed by him.
The judgment appealed from is correct and must therefore be affirmed.
Affirmed.