353 So.2d 1109 (1977)
CENTRAL BANK, Plaintiff-Appellant,
v.
Robert V. BISHOP, Defendant-Appellant.
No. 13417.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1977.
Rehearing Denied January 16, 1978.
Writ Refused March 3, 1978.
*1110 Snellings, Breard, Sartor, Shafto & Inabnett by W. S. Shafto, Jr., Monroe, for plaintiff-appellant, Central Bank.
McKinley, Bruscato & Loomis by Anthony J. Bruscato, Monroe, for defendant-appellant, Robert V. Bishop.
Before PRICE, HALL and JONES, JJ.
En Banc. Rehearing Denied January 16, 1978.
HALL, Judge.
Central Bank sued Robert V. Bishop seeking a money judgment in the amount of $13,039.80 on an indebtedness allegedly evidenced by a hand note in that amount dated December 10, 1974, and seeking to foreclose a collateral mortgage securing a mortgage note in the amount of $10,000 dated July 7, 1971, allegedly pledged to the bank to secure the hand note. Plaintiff's petition alleged that the two notes had been lost. After suit was filed defendant, who had possession of the mortgage note, presented it to the clerk of court and had the mortgage canceled on the records. Thereafter, defendant answered plaintiff's petition denying the indebtedness and that the note had been lost, and pleading payment.
After trial, the district court held that plaintiff proved the existence of the indebtedness but failed to overcome the presumption created by defendant's possession of the mortgage note that it had been paid or released from the pledge. Judgment was rendered against defendant for the amount sued for but rejecting plaintiff's demand for enforcement of the mortgage. Both plaintiff and defendant appealed. For reasons expressed in this opinion, we affirm the money judgment against defendant but reverse the judgment rejecting enforcement of the mortgage and order its enforcement.
In March, 1973, defendant borrowed $12,000 from plaintiff evidenced by a $12,000 hand note secured by the $10,000 collateral mortgage note. The hand note was renewed on December 15, 1973, February 4, 1974, June 13, 1974 and December 10, 1974. On each occasion defendant signed a new note reflecting the pledge of the collateral mortgage note. The old notes were marked renewed or paid and delivered to the defendant as they were replaced by new notes. The note dated December 10, 1974 was for $13,039.80 which included the original principal amount of $12,000 plus unpaid or discounted interest and is the note upon which suit was filed.
*1111 The testimony of the bank employees, supported by bank records including copies of the hand notes and a computer ledger sheet, firmly establish that defendant never paid any amount on the December, 1974 note. Defendant himself testified that he could not say whether the debt had been paid, but assumed that the original $12,000 debt was paid in early or middle 1974 when other substantial indebtedness owed the bank was paid out of the proceeds of a loan closing. Defendant offered into evidence a photocopy of the December, 1973 note which was marked paid on January 11, 1974. After that date, however, as previously mentioned, defendant signed three renewal notes evidencing the continued existence of the indebtedness.
After the December 10, 1974 note became delinquent Mr. J. Dixon Johnston, the commercial loan officer who dealt with defendant, regularly and on numerous occasions pressed defendant for payment and mentioned the possibility of foreclosure on the mortgage. Defendant never disputed the indebtedness nor questioned the bank's right to foreclose. In the latter part of 1975, another loan officer, Mr. Daniel O. Otts, was assigned to work with Mr. Johnston in connection with the loan. In November, Otts made a reappraisal of the mortgaged property, defendant's home. Otts was driven to defendant's home by defendant in his pickup truck, inspected the home and was driven back to the bank. Otts testified that prior to going with defendant he checked out the hand note and the collateral file which contained the mortgage note, the bank's appraisal sheet, the legal description of the property and other documents. When defendant came to pick him up Otts placed the hand note in the collateral file and took it with him to defendant's home. The last time Otts remembered seeing the file was when it was on the seat of defendant's pickup truck. Defendant testified Otts had no file or briefcase with him when they went to the house but defendant did not dispute the fact that they both went to the house for the purpose of making a reappraisal.
Otts did not realize the notes were missing until the following morning when the note and collateral clerks came to inquire into the whereabouts of the notes and file. The bank's note control sheet and collateral control sheet, which were legal pads on which the clerks record information as to which notes are checked out by bank officers, reflected that the notes and file were checked out by Otts and were not returned. These sheets were kept for a limited time until bank examiners and auditors verified the location and existence of notes and then were destroyed and were unavailable as evidence.
Extensive efforts were made to locate the two missing notes. Otts immediately called defendant at his office but defendant was out of town. Otts asked a secretary in Bishop's office to thoroughly check the office and truck and also asked her to contact defendant and inform him of the emergency, which she did. Otts went to defendant's office, looked through it and the truck, and found nothing. The next morning Otts went back to defendant's office and was told by defendant that he had diligently searched for the file and notes but could not find them. Otts discussed the matter with defendant on numerous occasions thereafter and defendant never indicated that he had possession of either of the notes.
Other bank officials carefully checked all of the bank's commercial loan and note files to make sure the notes were not misfiled. The collateral register maintained by the commercial loan department showed the mortgage note should still be in the bank's possession and that it had not been released.
Suit was filed in June, 1976, about seven months after the notes were "lost". On October 26, 1976, defendant's deposition was taken and at this time he revealed he found the mortgage note in one of his files after suit was filed and the very morning of the deposition took the note to the clerk of court and had the $10,000 mortgage canceled on the records.
Two cases cited by the trial court, Fabian v. Justice, 228 So.2d 739 (La.App. *1112 4th Cir. 1969) and Hughes v. Hughes, 170 So.2d 251 (La.App. 4th Cir. 1964), are authority for the proposition that when a promissory note is returned to the maker there is a presumption that the note has been paid and the burden of proof shifts to the payee to prove that the note has not been paid, which burden may be met by an explanation of the maker's possession of the note. The trial court correctly held that the presumption was not applicable to the hand note because defendant did not have possession of it, that plaintiff proved by a preponderance of the evidence that defendant executed the December 10, 1974 note as evidence of the indebtedness then owed by him to the bank, and that such indebtedness was never paid. The trial court felt, however, that "plaintiff's explanation of its [the mortgage note] possession is much less persuasive than its total evidence relating to the indebtedness [on the hand note]" and "defendant is entitled to the presumption that plaintiff's rights as pledgee of that note were voluntarily released."
This court is of the opinion that plaintiff met its burden of proof by satisfactorily explaining why the notes were not in its possession and how the defendant-maker came into possession of the mortgage note. Defendant could not explain how he received possession of the note, but only assumed that he obtained possession when he paid the December 15, 1973 note on January 11, 1974, or when other indebtedness was paid to the bank in the early part of 1974. The fact is, however, that each of the notes signed by defendant in February, June and December of 1974 contained a pledge of the mortgage note. Defendant never mentioned possession of the mortgage note when being pressed for payment and when foreclosure was discussed. An application signed by him in connection with the December, 1974 renewal, lists the mortgage note as collateral. The bank's collateral record shows the collateral mortgage note as being held by the bank. The bank officials testified it was never released from the pledge. Otts testified he saw the mortgage note in the collateral file in November, 1975 before going out to defendant's home. The overwhelming preponderance of the evidence is that the bank did not voluntarily release the mortgage note from the pledge nor did it voluntarily deliver possession of the mortgage note to defendant. On the other hand, the evidence clearly establishes that defendant came into possession of the note by reason of it having been inadvertently misplaced by Otts while with defendant during the trip to defendant's home to make the reappraisal.
There are cases holding that even though the pledgee is not in possession of the pledged thing, the pledge may still be enforceable. In Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956) a pledged insurance policy was found in the safety deposit box of the deceased pledgor. The court enforced the pledge on a finding that the pledgor was a trustee ad hoc or agent pro hac vice of the pledgee. The court held:
"`Possession, though essential to the validity of the pledge, need not be always in the creditor. It is sufficient that the thing pledged be in the possession of one occupying ad hoc, the position of a trustee. The debtor himself may, in some cases, be considered as such trustee and be given possession of the thing by him pledged, provided his tenure be precarious and clearly for account of the creditor. The Louisiana doctrine is in perfect accord with both the common, the Roman and French laws.' (Citing a long list of authorities and commentaries from various jurisdictions in support of the statement).
"Thus, it is manifest that the mere circumstance that the pledged insurance policy was found in the possession of the pledgor does not justify the conclusion that the pledge was extinguished and, in the absence of any evidence showing that the parties intended that the pledge be terminated or even that the pledgor considered it terminated, it will be presumed that the possession of the pledgor was precarious or as an agent pro hac vice."
LSA-C.C. Art. 3173 provides:

*1113 "The debtor who takes away the pledge without the creditor's consent, commits a sort of theft."
Cancellation of a mortgage on the public records through fraud, error or mistake without the knowledge or consent of the holder does not deprive the holder of his security. Zimmer v. Fryer, 190 La. 814, 183 So. 166 (1938); McL. Development Co., Inc. v. Pyburn, 268 So.2d 296 (La.App. 2d Cir. 1972); National Acceptance Company of America v. Wallace, 194 So.2d 194 (La.App. 2d Cir. 1967) writs refused 250 La. 467, 196 So.2d 533 (1967); 250 La. 470, 196 So.2d 534 (1967).
Plaintiff proved that it never voluntarily released the mortgage note from the pledge nor terminated the pledge nor voluntarily or purposely delivered possession of the note to defendant. Defendant's possession of the mortgage note was precarious and as agent pro hac vice. As between the parties to this suit, the pledge was not extinguished and plaintiff is entitled to be recognized as the holder and owner of the pledged mortgage note and is entitled to have the mortgage securing the note recognized and enforced. The rights of third parties, if any, relating to the pledge, mortgage note, mortgage, or mortgaged property are not the subject of this litigation and are not considered in this decision.
For the reasons assigned, that part of the judgment of the district court in favor of plaintiff and against defendant for $13,039.80 with interest and attorney's fees is affirmed. That part of the judgment rejecting plaintiff's demands for recognition, maintenance and enforcement of the mortgage note and mortgage is reversed and set aside. Judgment is hereby rendered in favor of plaintiff, Central Bank, and against defendant, Robert V. Bishop, recognizing and maintaining plaintiff's mortgage executed by the defendant dated July 7, 1971 in the principal amount of $10,000, recorded July 9, 1971 in the Records of Ouachita Parish, Louisiana, bearing Registry No. 638544, recorded in Mortgage Book 737, Page 590, affecting the following described property:
"A certain One (1) acre tract of land situated in the Southwest Quarter of Southwest Quarter of Section 3, Township 16 North, Range 4 East, Ouachita Parish, Louisiana, more particularly described as follows: From the Southwest corner of said SW ¼ of SW ¼ run East along the South line of SW ¼ of SW ¼ a distance of 1300 Feet, more or less, to the West line of Prairie Road (60 feet wide); thence run North along the West line of Prairie Road a distance of 420 feet to the POINT OF BEGINNING; thence continue North and fronting along the West line of Prairie Road a distance of 210 feet; thence run West and parallel to the South line of SW ¼ of SW ¼ a distance of 210 feet; thence run South and parallel to the West line of Prairie Road a distance of 210 feet; thence run East and parallel to the South line of SW ¼ of SW ¼ a distance of 210 feet to the POINT OF BEGINNING, containing One (1) acre, more or less.
and being the same property acquired by the mortgagor from Emma Wooten Deats, wife of Joseph S. Deats dated August 13, 1968 and duly recorded in the Conveyance Book 902, page 276 number 598628 of the Records of Ouachita Parish Louisiana."
This case is remanded to the Fourth Judicial District Court for such further orders and proceedings as may be taken in accordance with law in the enforcement of said mortgage.
Affirmed in part, reversed in part, rendered and remanded.