MARVIN, Judge.
In consolidated cases arising out of the bank’s foreclosure by ordinary process of Keckler’s home, Keckler appeals a judgment which dissolved a TRO against the foreclosure sale and which dismissed his action to enjoin the enforcement of, and to annul, the bank’s default judgment under which the sale was advertised.
On appeal, Keckler contends that the note upon which the bank sued was marked paid and returned to him and that the bank had not met its burden of proving otherwise. We find no manifest error in the trial court’s factual determination that the note had not been paid and that the bank erroneously and unintentionally marked the note paid and returned it to Keckler.
The bank answers the appeal and contends that attorney fees should be allowed for the services of its attorney below and here in dissolving the TRO. We affirm the judgment in all respects.
After 1978, Keckler had two secured loans with the bank. The first (Loan No. 89,214) was a $14,000 promissory note dated January 13, 1978, payable in $238 monthly installments. This note was secured by the pledge of a $20,000 mortgage on Keckler’s home. The second (Loan No. 89,218) was a $5,500 promissory note payable in full 90 days after date. This note was secured by a pledge of an $8,000 chattel mortgage on Keckler’s Ford van and by a pledge of the $20,000 house mortgage mentioned above.
On March 1, 1979, Keckler placed, with instructions, a $6,500 check with the bank. The bank was instructed on the deposit slip to deduct from the $6,500, a “pay-off” of $5,030.31 on the van, “payments” of $750.05 which were credited to the $14,000 note (Loan No. 89,214), and a deposit of the remainder ($729.64) in Keckler’s checking account.
The bank’s index card for the $5,500 van loan (No. 89,218) is stamped “PAID IN FULL” and bears a handwritten notation, “Title Released to customer 3-1-79 with paid note.” This latter notation cannot be correct because it was shown at the trial of *320 these cases that the $5,500 van note was yet in possession of the bank.
Before and after March 1, 1979, the bank periodically withdrew from Keckler’s checking account as its balance permitted, the $238 monthly installment payments on the $14,000 house loan (No. 89,214). When Keckler’s checking account was short of funds, a bank officer telephoned Keckler to make a deposit to cover these periodic withdrawals.
When Keckler failed to pay or deposit funds for the payment of the installment payments on the $14,000 note in the latter part of 1980, the bank and its attorney made several written demands on Keckler. On February 21, 1981, the bank brought suit for the balance on the note and sought recognition of its lien and mortgage security under the pledge of the $20,000 house mortgage. The bank also alleged that the $14,000 note had been “lost” or “mislaid” and that advertisement had been made concerning the lost or mislaid note. A default judgment was signed on April 22, 1981, for $6,259.02, plus interest, a delinquency charge, and 25 percent attorney fees. This judgment also recognized the bank’s lien and mortgage arising out of the pledge of the $20,000 house mortgage.
On July 21,1981, Keckler moved to enjoin the pending sale of his house by the bank and later brought his separate action to annul the default judgment. These actions were consolidated and the trial revealed that Keckler was in possession of the $14,-000 house note (No. 89,214) stamped with the bank’s stamp, “PAID IN FULL, MAR 1 1979”.
Keckler asserted that he had had many loans with the bank and that the bank withdrew periodic installments from his checking account to pay some of these loans while he paid other loans from time to time in full either by check or by cash. Keckler claims that after he paid the van note with a part of the $6,500 check on March 1,1979, he returned to the bank and paid Julia Hill, a bank employee, in cash, the approximate $7,000 or $8,000 balance due on the house note and that she gave him the $14,000 note stamped paid in full. Julia Hill categorically denied Keckler’s testimony and introduced bank records of all of the cash transactions of March 1,1979, which reflect that no such transaction or similar transaction occurred on that date. This presents essentially a credibility issue.
We find that it was within the province of the trial court to accept Ms. Hill’s testimony and to reject Keckler’s testimony on this point. Billiot v. Bourg, 338 So.2d 1148 (La.1976); Boatner v. McCrory Corp., 341 So.2d 1174 (La.App. 1st Cir. 1977), writ refused. The bank’s records and other testimony present circumstances from which the trial court could reasonably infer was corroborative of Ms. Hill’s testimony and which support the result below.
We conclude, as did the trial court, that it is more probable than not that the $14,000 house note (Loan No. 89,214) was stamped paid and was given by the bank in error to Keckler when it was the bank’s intention to give him the van note, the full payment of which is not disputed. Under these circumstances, the bank met its burden of proving that the $14,000 note in fact had not been paid and was given to Keckler in error. See Central Bank v. Bishop, 353 So.2d 1109 (La.App. 2d Cir. 1977); Fabian v. Justice, 228 So.2d 739 (La.App. 4th Cir. 1969).
The vice president of the bank agreed that the “arrangement” for attorney fees was the amount stated in the note (25%) and “not more” if the case went to “the Supreme Court” and “not less” if the case was by “default judgment”. The default judgment fixed the attorney fees at 25 percent of the amount of the judgment. The trial court noted that the litigation arose because of the bank’s mistake in giving Keckler the wrong note and that additional attorney fees for the dissolution of the TRO would not be allowed. It has been observed that the use of the word may in Art. 3608, CCP (“Attorney’s fees for .. . the dissolution of a retraining order may be included as an element of damages ... ”) affords some discretion to the courts and that an award of attorney fees is not mandatory in every case. Langevin v. Howard, *321 363 So.2d 1209 (La.App. 2d Cir. 1978), writ denied.
Under these circumstances, we reject the bank’s contention, made in answer to the appeal, that attorney fees should have been assessed against Keckler for dissolution of the TRO.
At appellant’s cost, the judgment is AFFIRMED.