542 So.2d 838 (1989)
DIESI LEASING, INC. Plaintiff-Appellee,
v.
Sam MORROW, d/b/a Ramah Truck Stop & Restaurant Defendant-Appellant.
No. 88-76.
Court of Appeal of Louisiana, Third Circuit.
April 19, 1989.
Rehearing Denied May 15, 1989.
Dean, Lomenick & Seemann, G. Frederick Seemann, Lafayette, for plaintiff-appellee.
Pucheu & Pucheu, John H. Pucheu, Eunice, for defendant-appellant.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, James E. Diaz, Jr., Lafayette, for defendant-appellee.
Before GUIDRY, STOKER and KING, JJ.
STOKER, Judge.
The plaintiff, Diesi Leasing, Inc. (Diesi), filed suit against the defendant, Sam Morrow, d/b/a Ramah Truck Stop and Restaurant (Morrow), seeking to recover damages for defendant's alleged breach of an automobile lease contract. Defendant answered setting forth defenses to the action and reconvened against plaintiff seeking cancellation of the contract and damages, based upon vices and defects in the automobile. Defendant filed a third-party demand against General Motors Corporation (GM) for any amounts that defendant might be cast in judgment. This third-party demand was based upon the existence of the alleged vices and defects in the automobile. Plaintiff also filed a third-party demand against GM for any amounts that plaintiff might be cast in judgment on defendant's reconventional demand. Various pretrial exceptions were filed by the parties which were referred to the merits of the case. After trial on the merits, the trial court awarded judgment in favor of the plaintiff against the defendant, dismissed defendant's *839 reconventional demand against plaintiff and dismissed the third-party demands filed against GM. The defendant has appealed the judgment of the trial court.

FACTS
On October 13, 1982 Morrow entered into a non-maintenance lease agreement with Diesi for the lease of a 1983 Cadillac El Dorado automobile. The lease term was 36 months with a monthly rental charge of $563.81 plus tax. The lease provided that in the event of premature termination of the lease the lessee would be liable to the lessor for any difference in the original value of the car and any lesser amount received upon the sale of the automobile at wholesale. The original value of the car was determined at the inception of the lease, and at premature termination it would be reduced by any rental payments made by defendant, less any amounts earned by the plaintiff under the lease.
Morrow used the automobile until September of 1984 at which time he informed Diesi that he no longer wanted the automobile. During the time Morrow used the car it had to be serviced on several occasions for problems with the air conditioner. Morrow put 29,518 miles on the car during that time. Diesi agreed to take the car from Morrow and put it on the Diesi car lot for sale. On October 31, 1984 Diesi sold the automobile to Mr. and Mrs. Robert Clark for $18,446. Mrs. Clark paid for the automobile and left with the automobile. The following day, Mrs. Clark called Diesi and informed Sammy Diesi that she did not want the automobile because someone in her family told her that she had paid too much for it and she had spoken to Mrs. Morrow about their problems with the automobile. Diesi agreed to take the car back, rescind the sale, and gave Mrs. Clark her money back.
Defendant subsequently took the car back from Diesi, refused to make any payments after November of 1984 and agreed to surrender the car to Diesi in January of 1985 after demand was made by Diesi. Diesi sold the car at wholesale for $12,500 and made demand for $4,806.60 which it determined was Morrow's liability pursuant to the premature termination provision of the lease. Morrow refused to pay the amount demanded and this litigation ensued.

ISSUES ON APPEAL
The defendant has assigned as error (1) the trial court's finding that he was liable under the lease, in spite of the fact that Diesi sold the leased automobile and then rescinded the sale and (2) the trial court's failure to find that defendant was entitled to cancellation of the contract and damages from Diesi and GM as a result of the defects in the leased automobile.

WAS THE LEASE CONTRACT TERMINATED BY THE SALE TO THE CLARKS ON OCTOBER 31, 1984?
The defendant argues that the lease was terminated when Diesi sold the leased automobile to Mr. and Mrs. Clark and because the price received was in excess of the maximum lessee liability that he owes nothing to Diesi. In fact, defendant argues on appeal that he is entitled to the amount received by Diesi from the sale which exceeded his maximum liability pursuant to the terms of the lease.
The lease contract provided, in pertinent part, that:
"31. PREMATURE LEASE TERMINATION: It is intended that this lease will run for the full term specified on the preceding page, however, should unforeseen developments arise, the Lessee may elect, at his option, to terminate at any time after the first six months providing that Lessee is not in default, by giving the Lessor at least 30 days prior written notice of his intention and by return of the vehicle to the Lessor at the address hereinbefore mentioned. In the event of premature termination, if insurance has been procured by or provided by the Lessor, the provisions of the insurance policy(s) will define the Lessee's liability for insurance premiums. Lessee liability to the Lessor for vehicle rentals in the event of premature *840 lease termination is defined according to the act of lease as follows:
(a) Premature Termination Liability Open-End Lease: The Cash Down Payment (ITEM 2) together with the Net Trade-in (ITEM 3) constitute prepaid depreciation which will be credited against the Original Value of the Vehicle (ITEM 1) at lease inception. The portion of the Total Amount of Fixed Monthly Rentals NOT To Be Credited Against Original Value (ITEM 6A) will be earned by the Lessor according to the "Rule of 78." The earned portion of the Total Amount of Fixed Monthly Rentals NOT To Be Credited Against Original Value will be subtracted from the sum of all the Fixed Monthly Rental Charges (ITEM 7) paid by the Lessee to the Lessor up to the point of lease termination to establish the amount of the depreciation credit against the Original Value of the Vehicle (ITEM 1) to which the Lessee will be entitled based upon the Fixed Monthly Rental Charges which he has paid. The depreciation credit calculated in this way together with the prepaid depreciation based upon both the Cash Down Payment (ITEM 2) and the Net Trade-in (ITEM 3) will be subtracted from the Original Value of the Vehicle (ITEM 1) to establish the Maximum Amount of Open End Lessee Liability in the event of premature lease termination. The Lessor shall sell the vehicle at wholesale in such commercially reasonable manner as Lessor shall determine. If the net amount received from such sale is more than the Maximum Amount of Open End Lessee Liability in the event of premature lease termination as set forth in this paragraph, Lessor shall pay such excess to Lessee. If the net amount received from such sale is less than the Maximum Amount of Open End Lessee Liability in the event of premature lease termination, the total amount of such deficiency shall be paid by Lessee upon demand to Lessor." (Emphasis added)
The contract contemplates that it may be terminated prior to the expiration of its term. The defendant was not in default at the time Diesi first took the car, however there is nothing in the record to indicate that the notice requirements were complied with. Nonetheless, that requirement is considered waived because Diesi accepted the car and offered it for sale. A sale was subsequently perfected between Diesi and Mr. and Mrs. Clark on October 31, 1984 for the sum of $18,466. Pursuant to the terms of the lease it was Diesi's responsibility to sell the car at the termination of the lease, whether premature or not. The lease required Diesi to sell the car at wholesale in a commercially reasonable manner. The fact that Diesi chose to sell the automobile at retail is of no consequence in this instance.
The trial court, in written reasons, found that, "The defendant had trouble with the car, and the lease was prematurely terminated. The car was sold by plaintiff and the obligation paid off in full." However, the trial court went on to find that the defendant was indebted to the plaintiff because he took the car back after Diesi rescinded the sale to the Clarks.
We agree with the trial court's finding that the October 13, 1982 lease was prematurely terminated and the sale to the Clark's extinguished any liability of the defendant under the lease. The lease was not thereafter resurrected by defendant taking the car back. Any liability of defendant must therefore be premised upon a new contract of lease.
Based upon the events presented in the record, which occurred after the sale of the automobile, we do not find that the plaintiff bore its burden of proving the terms of a new agreement which entitled it to the damages awarded by the trial court. The correspondence between the parties establishes that no terms were ever agreed upon concerning what defendant's future liability would be to plaintiff. Sammy Diesi testified that, subsequent to the sale to the Clarks, he offered to wholesale the car with the understanding that defendant would pay the difference in the wholesale price and the payoff on the car. By Mr. Diesi's own admission, defendant did not agree to this and chose instead to take the car back, to continue making lease payments and to try to sell the car himself. Defendant took the car back, made one *841 payment, then demanded that Diesi take the car. However, defendant did not agree to be liable for additional amounts to Diesi.
The burden of proving a contract is on the party asserting the contract. The party must show there was a contract and the terms thereof. New Orleans Silversmiths, Inc. v. Wormser, 258 So.2d 592 (La.App. 4th Cir.1972). "It is elementary that a contract arises only where both parties have agreed to its terms." Colgin v. Security Storage & Van Co., 208 La. 173, 23 So.2d 36, 40 (1945). The essential elements of a lease are the thing, the price and the consent. LSA-C.C. art. 2670.
After reviewing the record before us, we conclude that the plaintiff failed to prove a new contract between the parties. The plaintiff and defendant did not sign a new lease; by their words and actions they did not agree to the same terms as contained in the old lease. In fact we can find no agreement at all between the parties. We find that the facts and circumstances establish a series of misunderstandings and disagreements between the parties which do not support a finding that a new contract of lease was perfected. "`Contracts are founded on the agreements, not on the disagreements, of the parties. Where they misunderstand each other, there is no contract.' "McCarty v. Anderson, 58 So.2d 255, 259 (La.App. 1st Cir.1952). Absent proof of a contract between the parties, we find that the trial court was clearly wrong in awarding damages to the plaintiff.
Defendant asserts on appeal that plaintiff is indebted to defendant in the sum of $1,119.40 representing the difference between the maximum lessee liability under the lease and the price received from the sale of the automobile to the Clarks. Defendant did not plead this in his pleadings or at trial, but argues that the pleadings were enlarged and he is entitled to recover this amount. We disagree with defendant's contention. For there to be an automatic enlargement of the pleadings under LSA-C.C.P. art. 1154, the evidence admitted must not be pertinent to any other issue raised by the pleadings. If the evidence was admissible for any purpose, it could not enlarge the pleadings without the express consent of the opposing party. Landry v. Yarbrough, 199 So.2d 377 (La. App. 1st Cir.1967). The evidence of defendant's maximum liability under the lease and the lease were introduced by plaintiff to prove his case. Defendant admitted the evidence of the sale to the Clarks to show the fact of a sale which allegedly terminated the lease. This evidence does not enlarge the pleadings to permit defendant's demand on appeal for sums allegedly due under the lease.

REMAINING ISSUES ON APPEAL
Because we find that the October 13, 1982 lease was terminated by the actions of the parties and the October 31, 1984 sale of the leased automobile, we pretermit any further discussion of the issues presented by defendant in this appeal.
Accordingly, for the reasons assigned herein, the judgment of the trial court is reversed insofar as it awards judgment in favor of plaintiff, Diesi Leasing, Inc., and plaintiff's suit is hereby dismissed. The judgment is affirmed in all other respects. Costs of this appeal are assessed to plaintiff-appellee.
REVERSED IN PART; AFFIRMED IN PART.