552 So.2d 77 (1989)
DOUGLAS OIL TOOLS, INC., Plaintiff-Appellant,
v.
Millard P. DEMESNIL, Jr., Defendant-Appellee.
No. 88-92.
Court of Appeal of Louisiana, Third Circuit.
November 8, 1989.
*78 Warren D. Rush, George S. Bourgeois, Jr., Lafayette, for plaintiff-appellant.
Perrin, Landry, deLaunay & Durand, Gerald C. deLaunay, Lafayette, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and FORET, JJ.
GUIDRY, Judge.
Plaintiff, Douglas Oil Tools, Inc. (hereafter Douglas), appeals the trial court's judgment which recognized defendant, Millard P. Dumesnil (hereafter Dumesnil), as the owner of certain movables purchased by Douglas which were attached to Dumesnil's property during the pendency of a lease.
The trial judge, in written reasons, summarized the facts as follows:
"This suit arises out of a commercial lease executed June 1st, 1981 between Millard P. Dumesnil, Jr., as lessor, and Douglas Oil Tools, Inc., as lessee. The term of the lease was for ten (10) years, beginning June 1st, 1981. The property which was the subject matter of this lease included two (2) metal buildings. Douglas Oil Tools, Inc. operated its business from one building, and Quebec Machine Shop, Inc. conducted business out of the other.
During the existence of the lease Douglas Oil Tools, Inc. installed the following improvements to both buildings, the ownership of which is the subject of this lawsuit:
1.) Two (2) overhead cranes
2.) Three (3) overhead hoists
3.) Air compressor
4.) Sliding metal doors into the walls
5.) Outdoor lighting
6.) Indoor lighting
7.) Water cooler
On September 1, 1983 Jay Menard, the sole stockholder of Douglas Oil Tools, Inc., made a stock purchase agreement whereby Eddie Knight agreed to purchase all of the stock in the company. Because Mr. Knight already owned a facility in which to house the business, he did not want to continue the lease with Mr. Dumesnil. In order to facilitate the sale, Mr. Dumesnil (Jay Menard's brother-in-law) agreed by letter dated September 19th, 1983 to substitute Mr. Menard as lessee and release Douglas Oil Tools, Inc.
After the sale was completed Douglas Oil Tools vacated the leased premises. After all of the movable supplies and equipment had been removed, some of Mr. Knight's employees attempted to remove the improvements previously described. Mr. Dumesnil stopped them, stating these items belonged to him under the terms of the lease. The pertinent provision in the lease reads:
Moreover, any additions or alterations or improvements made by Lessee, with or without consent of the lessor, no matter how attached, shall remain the property of the lessor unless otherwise stipulated herein, and Lessee expressly waives any right to compensation for any such additions or alterations which may be made on the premises. Notwithstanding the above, however, Lessee may remove from the premises its trade fixtures, office supplies, movable office furniture and equipment not attached to the leased premises provided (a) such removal is made prior to the termination of the term of the lease; (b) Lessee is not in default of any obligation or covenant under this lease at the time of such removal; and (c) Lessee promptly repairs all damage caused by the installation use or removal of any such furniture or equipment."
The trial court declared Douglas the owner of the water cooler but dismissed its demands as to the other movables finding them to be the property of Dumesnil pursuant to the terms of the lease. Douglas appealed.
The issues on appeal are: (1) was Douglas granted the right to remove the movables subject of this suit by the provisions of *79 the 1981 lease; (2) if not, was this right granted to Douglas by a September 19, 1983 letter from Dumesnil acknowledging the substitution of a third party as tenant and releasing Douglas of any past, present or future obligations to Dumesnil; and, (3) the effect of a subsequent suit and settlement agreement by Dumesnil in which he asserted a lessor's lien on the movables which appellant claims constitutes a judicial admission.

THE LEASE AGREEMENT
Appellant asserts that it is entitled to remove the disputed movables under the terms of the lease. Appellant argues, based on the testimony of Dumesnil and its expert witness, Kirby Pecot, that the disputed items are "trade fixtures" and as such never became the property of Dumesnil and were subject to removal prior to the termination of the lease if the lessee was not in default at the time of the removal and repair was made of any damage caused by the installation, use or removal of the items.[1]
The lease provisions reads in pertinent part as follows:
"Notwithstanding the above, however, Lessee may remove from the premises its trade fixtures, office supplies, movable office furniture and equipment not attached to the leased premises provided..." (Emphasis ours)
The trial court found it unnecessary to categorize the disputed movable items, presumably concluding that the language of the lease qualified the removal right of the lessee to equipment, including "trade fixtures", which were not attached to the leased premises. In this regard, the trial court stated as follows:
"After careful consideration, the Court finds that all of the improvements at issue except the water cooler were attached to the leased property, and remain the property of the lessor.... to remove these items would require extensive work to return the building to its original state."
We find no error in the trial court's interpretation of the lease provisions and the record fully supports the finding that the disputed movables are "attached" to the leased property within the intendment of that provision. We find no ambiguity in this provision of the lease and appellant suggests none. However, even if the quoted provision be considered ambiguous, i.e., whether the phrase "not attached to the leased premises" modifies all enumerated items or only "equipment", the record supports a finding that the court's interpretation conforms to the intent of the parties.
Both parties to the lease, i.e., Menard, on behalf of Douglas, and Dumesnil, testified that when the lease was executed, the parties intended that any improvements or additions would become the property of Dumesnil when installed if attached to the leased premises. According to the parties, the monthly rental was specifically fixed in consideration of Douglas' agreement that attached fixtures would remain the property of the lessor upon termination of the lease.

THE SEPTEMBER 19, 1983 LETTER
The letter of September 19, 1983, which was addressed to Douglas and Eddy Knight, reads in full as follows:
"In response to a request by Jay Menard, please be advised that the undersigned is the Lessor of the captioned property. The purpose of this letter is to advise you that Jay Menard is now the Lessee of said space, and that although Douglas Oil Tools, Inc., has previously utilized the premises, the undersigned does not consider Douglas Oil Tools, Inc. to be the tennant [sic], nor look to Douglas Oil Tools, Inc. for payment of rent. The *80 undersigned further acknowledges that Douglas Oil Tools, Inc. has no past, present, nor future obligations to the undersigned in connection with the said premises now leased to Jay Menard."
As we understand Douglas' argument, it contends that the quoted language releasing Douglas from all past, present or future obligations under the lease, was somehow sufficient to grant Douglas the right to remove the disputed movables from the premises. In our view, to ascribe such meaning to the letter would require a strained interpretation of its contents which is not supported by the record evidence. The letter makes no mention whatever of the disputed movables which were attached to the leased premises some two years before its writing. The evidence makes clear that the purpose of the letter was to substitute Menard as lessee in place of Douglas so as to relieve Douglas of any future obligations for rents due under the lease. Knight testified that the release was a condition of his purchase of Douglas because he had no use for the Dumesnil property. Knight had an existing business with adequate space and facilities. There is no evidence that the subject movables were even discussed in the negotiations between Dumesnil, Menard and Knight. The only matter discussed was who would assume the obligation for the rental payments. Under the lease provisions, the disputed movables became the property of Dumesnil when initially attached. We do not consider that the letter conveyed ownership of the movables back to Douglas.
The final issue for consideration is Douglas' contention that a later suit by Dumesnil against Menard, for unpaid rents, wherein Dumesnil sought recognition of a lessor's lien on the disputed items, constitutes a judicial admission that Dumesnil did not own the disputed movables. In disposing of this contention, the trial court stated:
"The court feels Mr. Dumesnil was making every effort to protect his property, but will not hold this against him."
La.Civil Code Article 1853 provides in pertinent part:
"A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it.
A judicial confession is indivisible and it may be revoked only on the ground of error of fact."
The source of Article 1853 is former Louisiana Civil Code Article 2291 of 1870. The new article did not change the law.[2] This article has been interpreted as limiting its application to the pleadings or note of evidence in the suit itself. Financial Corp. v. Estate of Cooley, 447 So.2d 594, 599, 600 (La.App. 3rd Cir.1984). Admissions made in other proceeding are considered extrajudicial confessions or admissions. As such, they are evidence, but they do not create conclusive presumptions or operate as an estoppel against the party making them. The only instance where an extrajudicial confession will operate as an estoppel against the party making it is if the party claiming the benefit of the estoppel was deceived by the admission or relied on it to his prejudice. Financial Corp. v. Estate of Cooley, supra, at p. 600. Knight clearly did not rely on this extrajudicial admission when he agreed with Menard to purchase Douglas' stock or assume Douglas' loan with InterFirst Bank because the later suit was filed after the sale was consummated. Since the alleged "confession" is only evidence and not a conclusive presumption, the trial court did not err in viewing the action as Dumesnil's effort to protect his property.
Since we conclude that Douglas never acquired ownership of the disputed movables, we need not address its remaining contentions.
Accordingly, for the reasons stated, the judgment of the district court is affirmed.
*81 All costs of this appeal are assessed against plaintiff-appellant.
AFFIRMED.
NOTES
[1] Black's Law Dictionary defines trade fixtures as "articles placed in or attached to rented buildings by the tenant, to prosecute the trade or business for which he occupies, the premises, or to be used in connection with such business, or to promote convenience and efficiency in conducting it. Such chattels as merchants usually possess and annex to the premises occupied by them to enable them to store, handle, and display their goods, which are generally removable without material injury to the premises". Black's Law Dictionary 574 (5th Ed. 1979).
[2] Comment (a) to Louisiana Civil Code Article 1853 and Lakeshore Property Owners v. Delatte, 524 So.2d 126 (La.App. 4th Cir.1988).