610 So.2d 1063 (1992)
The CADLE COMPANY, Plaintiff-Appellant,
v.
Millard P. DUMESNIL, Jr., Defendant-Appellee.
No. 91-1295.
Court of Appeal of Louisiana, Third Circuit.
December 9, 1992.
Writ Denied March 12, 1993.
*1064 Robert L. Atkinson, Baton Rouge, for plaintiff/appellant.
Perrin, Landry, deLaunay & Durand, Gerald deLaunay, Lafayette, for defendant/appellee.
Before DOMENGEAUX, C.J., and KNOLL and SAUNDERS, JJ.
KNOLL, Judge.
Plaintiff, The Cadle Company, appeals the trial court's denial of its claim for a declaratory judgment recognizing its security interest in certain life insurance policies allegedly pledged or assigned as security for a note issued to Capital Bank & Trust Company by Millard P. Dumesnil, Jr. The trial court held that Cadle, as an assignee of the note, failed to establish its rights in the policies because the evidence failed to show that the policies in question were actually delivered to Capital Bank as required by the Louisiana Civil Code.
Cadle appeals, contending that the trial court erred by: (1) failing to find that Cadle established, by a preponderance of the evidence, delivery of the life insurance policies; (2) failing to bind the defendant, Dumesnil, to a previous admission because Cadle justifiably and detrimentally relied on the admission; and, (3) failing to recognize a perfected assignment of the life insurance policies. We affirm.
*1065 FACTS
Cadle filed suit, seeking a declaratory judgment recognizing its security interest in eight life insurance policies allegedly either pledged or assigned to Capital Bank as security on a note. The note evidences a debt of Dumesnil to Capital Bank. Capital Bank was placed in liquidation by the Federal Deposit Insurance Corporation (FDIC).
In February of 1987, Cadle purchased a package of loans from FDIC which included the Dumesnil note. Testimony of Timothy J. Taber, vice-president and general counsel of Cadle, and documentary evidence indicate that Cadle has title to the note. As he admitted at trial, Dumesnil executed a collateral pledge agreement in favor of Capital Bank and eight assignments, each assigning, transferring, and setting over one of the policies at issue to Capital Bank.
On September 14, 1988, Dumesnil filed a Chapter 11 bankruptcy proceeding in the bankruptcy court of the Western District of Louisiana. Dumesnil listed neither the debt to Capital Bank as a liability nor the policies as assets on the bankruptcy schedules. Subsequently, Cadle filed a proof of claim in the proceeding, asserting its claim as a secured creditor. Then, Cadle moved the bankruptcy court to lift the automatic stay and abandon the insurance policies so that it could pursue its rights in the policies in state court. The bankruptcy court granted this motion on July 11, 1990.
Cadle attempted to cash in the insurance policies but, pursuant to Dumesnil's conflicting demand, Prudential Insurance Company of America refused to cash the policies absent a court order. After the policies were abandoned from the bankruptcy estate, Dumesnil argued that he could recover the cash value of the policies in preference to Cadle and other creditors who were not paid from the bankruptcy. Cadle then filed this suit for declaratory judgment on August 16, 1990. Dumesnil answered, claiming rights as owner of the policies and denying Cadle's security interests in the policies.
After a trial on the merits on May 31, 1991, the trial court took the matter under advisement and rendered a written judgment on August 29, 1991, conforming to its prior written ruling. It held that Cadle failed to prove that the policies were delivered to Capital Bank; thus, Cadle failed to prove that it, as transferee of Dumesnil's note, had any security rights in the life insurance policies.
Initially we note that Dumesnil argues that the trial court erred in admitting, over his timely objection, the asset sale agreement (Plaintiff's exhibit 2) between Cadle and the FDIC, under the business record exception, LSA-C.E. Art. 803(6). Dumesnil cannot initiate this issue since he did not cross appeal requesting this relief; therefore, we cannot address this issue.
ACTUAL DELIVERY OF THE INSURANCE POLICIES ESSENTIAL TO A VALID PLEDGE
As the trial court realized, the issue of delivery is the crux of this case. The trial court recognized that the Louisiana Civil Code requires proof of actual delivery of the pledged item to establish a valid pledge. LSA-C.C. Art. 3152 reads:
"It is essential to the contract of pledge that the creditor be put in possession of the thing given to him in pledge, and consequently that actual delivery of it be made to him, unless he has possession of it already by some other right."
Article 3158 provides in pertinent part:
"B.(1) When a debtor wishes to pledge... policies of life insurance, ... he shall deliver to the creditor the ... policies of life insurance ... so pledged, and such pledge so made, except as hereinafter provided with regard to life insurance policies, shall without further formalities be valid as well against third persons as against the pledgor thereof, if made in good faith...."
As these two codal articles illustrate, delivery of the policies is an essential requirement of creating a valid pledge.
Cadle cites a few isolated cases involving unusual fact situations in which the courts have found that a third party or even the pledgor held the pledged asset as *1066 an agent pro hac vice for the pledgee. In these cases, the courts found that because the third party or pledgor retained possession of the thing pledged "precariously and clearly for the account of the creditor" the requirement of delivery was fulfilled, creating a valid pledge. See, e.g., Scott v. Corkern, 231 La. 368, 91 So.2d 569 (1956); Central Bank v. Bishop, 353 So.2d 1109 (La.App. 2nd Cir.1977), writ denied, 355 So.2d 549 (La.1978); First National Bank of Shreveport v. Querbes, 253 So.2d 123 (La.App. 2nd Cir.1971).
In the cited cases, the pledged instruments were first delivered to the pledgee before returning to the pledgor's possession, or the instrument was actually delivered to the third party agent pro hac vice. In the case presently before us, as we will later examine more completely, the record does not support, by a preponderance of the evidence, a determination that any delivery of the pledged instrument whatsoever occurred. Furthermore, no evidence was presented tending to show that Dumesnil or any one else was retaining possession of the policies precariously or for the benefit of Capital Bank, the creditor. We do not find that the facts of the case sub judice justify an exception from the clear and unambiguous requirement of actual delivery in LSA-C.C. Art. 3152 and 3158.
EFFECT OF EXTRAJUDICIAL STATEMENTS MADE IN PRIOR BANKRUPTCY PROCEEDING ON CURRENT PROCEEDING
Before addressing the issue of whether Cadle proved delivery of the pledged note by a preponderance of the evidence, we must first resolve preliminary evidentiary issues. First, Cadle submits as evidence of the policies' delivery to Capital Bank a statement of Dumesnil contained in a memorandum in support of a motion to continue in the earlier bankruptcy proceeding. The memorandum provides in pertinent part:
"As it turns out, these policies were owned by [Dumesnil], and had been pledged by him in 1986 to secure a debt due to Capital Bank & Trust Company. Because the policies had been delivered to Capital Bank & Trust Company in Baton Rouge, the debtor did not think to mention them to the undersigned at the time the original schedules were filed herein."
Because the statement was made in a different proceeding, the statement does not constitute a judicial confession under LSA-C.C. Art. 1853. However, the statement may be an extrajudicial admission. Extrajudicial admissions, admissions made in prior proceedings, are admissible into evidence, but do not create conclusive presumptions or operate as estoppel against the party making them, unless there is a showing of deception or prejudice. Financial Corp. v. Estate of Cooley, 447 So.2d 594 (La.App. 3rd Cir.1984); Douglas Oil Tools, Inc. v. Demesnil, 552 So.2d 77 (La.App. 3rd Cir.1989).
Dumesnil argues that the statement written in the memorandum in the bankruptcy proceedings should not be considered at all in this case. We interpret his argument as being that the statement lacks evidentiary value because it does not qualify even as an extrajudicial admission. He cites Howard Trucking Co., Inc. v. Stassi, 474 So.2d 955 (La.App. 5th Cir.1985), aff'd, 485 So.2d 915 (La.1986), cert. denied, 479 U.S. 948, 107 S.Ct. 432, 93 L.Ed.2d 382 (1986), as authority. In Howard, a party to an earlier bankruptcy proceeding made several references in exhibits, witness testimony, and an application to compel adoption or rejection of leases which implied that the arrangement in question in the civil court case was a lease rather than a sale. The court found that the plaintiff in the civil case did not detrimentally rely on the judicial confessions made by the defendants during the bankruptcy proceeding; thus, it found that the trial court was correct in not recognizing the judicial confessions as full proof against the defendants.
In our view, Howard does not prohibit admission of the prior statement in the memorandum which the court may consider as evidence. We find that the statement in the memorandum in support of the motion to continue filed in the previous bankruptcy proceedings is not conclusive of the fact of *1067 delivery, but does constitute evidence to be accorded some weight.
Cadle next argues that the trial court erred in refusing to consider Dumesnil's extrajudicial admission of delivery in the bankruptcy proceeding as a conclusive presumption or as an estoppel. The trial court so ruled because it found no evidence presented showed that Cadle relied to its detriment on these statements in purchasing the package of assets from the FDIC. Cadle argues that the trial court erred in this respect. It argues that its claim regarding deception and prejudice relate not to Cadle's purchase of the assets from the FDIC, but to Cadle's decision to seek abandonment of the policies by the bankruptcy court. Conversely, Dumesnil asserts that the claim of estoppel, which is an affirmative defense, may not be urged on appeal. Dumesnil further avers that the facts do not support a finding of detrimental reliance.
Detrimental reliance or estoppel is an affirmative defense which must be specifically pleaded. LSA-C.C.P. Art. 1005; Thebner v. Xerox Corp., 480 So.2d 454 (La.App. 3rd Cir.1985), writ denied, 484 So.2d 139 (La.1986). The plea cannot be raised for the first time in brief and argument. Norvell v. Crichton, 150 So.2d 621 (La.App. 4th Cir.1963). Cadle's petition did not raise the affirmative defense of detrimental reliance or estoppel. Thus, the doctrine will not apply to allow Dumesnil's statement in the bankruptcy court indicating that delivery occurred to operate as an estoppel against him.
Even if this was not the case, we would find that the trial court did not err in finding that the record failed to show that Cadle justifiably relied on the statements to its detriment. Cadle's witness and general counsel, Taber, testified that his decision to have the policy abandoned was a business and legal decision based on his feelings that they "would be better off in state court, on what was purely a state issue." Under these circumstances, we find the trial court did not err in allowing Dumesnil's statement made in the memorandum filed in the bankruptcy proceeding to operate as an estoppel against him.
Finally, as proof of delivery of the policies, Cadle offered the requests for admissions submitted to Dumesnil in the bankruptcy proceeding. In pertinent part, the requests sought an admission that the policies were pledged. Dumesnil never responded to the requests. Cadle asserts that his failure to answer constitutes an admission under Federal Rules of Civil Procedure Rule 36(a). However, the clear wording of this rule mandates a finding that Dumesnil's failure to answer the requests for admissions may not be used as an admission against him in the present proceeding. Rule 36(a) provides in pertinent part:
"Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission for any other purpose nor may it be used against the party in any other proceeding."
LSA-C.C.P. Art. 1468 contains a similar provision.
TRIAL COURT WAS NOT MANIFESTLY ERRONEOUS IN FINDING THAT CADLE FAILED TO PROVE ACTUAL DELIVERY OF THE LIFE INSURANCE POLICIES TO CAPITAL BANK
The issue of delivery is the pivotal issue of this case. The trial court correctly recognized that Cadle must prove the fact of delivery of the life insurance policies to Capital Bank by a preponderance of the evidence. Meyer v. State, Dept. of Public Safety Lic. Con., Etc., 312 So.2d 289 (La. 1975); Dupre v. Joe's Riverside Seafood, Inc., 578 So.2d 158 (La.App. 1st Cir.1991). We have ruled that Dumesnil's failure in the bankruptcy proceedings to answer a request for admission that the policies were pledged may not be used as an admission in this suit. Therefore, we must determine whether Cadle proved by a preponderance of the evidence through the use of other evidence that actual delivery of the policies occurred.
Other evidence pertinent to the issue of delivery includes Dumesnil's statement in *1068 the memorandum in support of the motion to continue filed in the bankruptcy proceeding in which he stated that the policies had been delivered to Capital Bank. Additionally, Dumesnil admitted that he actually received the proceeds of $31,130.47 represented on the note, and that he intended to secure repayment of the debt with the life insurance policies. He acknowledged executing the promissory note, the collateral pledge agreement, and eight separate assignments, each assigning one of the policies at issue. However, Dumesnil testified that he could not remember one way or another whether he delivered the policies to Capital Bank, nor could he say definitely whether anyone else did.
Dumesnil did not offer any evidence tending to negate Cadle's position that delivery to Dumesnil actually occurred. The only additional evidence which we may logically construe as tending to rebut delivery to Capital Bank is that of Taber, Cadle's representative. Taber explained that prior to purchase, Daniel Cadle examined the bank's files relative to the notes which were being acquired and found no representations or documents referencing the policies in the FDIC file.
As Dumesnil points out in brief, Taber admitted that the insurance policies were never delivered to him on behalf of Cadle, nor had he ever seen them. Furthermore, the record establishes that Cadle does not know who has physical possession of the policies. However, although the trial court seemed to rely on this fact, delivery to Cadle is not the crucial issue. Instead, the pivotal question is whether delivery to Capital Bank occurred because if the pledge to Capital Bank was perfected by delivery, then, pursuant to LSA-C.C. Art. 2645, the transfer of the note included the accessory pledge.
At trial, Cadle had the burden of proving by a preponderance of the evidence that actual delivery occurred. To paraphrase the often cited case of Canter v. Koehring Company, 283 So.2d 716, 724 (La.1973), we may not overturn the trial court's factual finding of the lack of delivery in the absence of manifest error, both because of the trial court's better capacity to evaluate live witnesses and the proper allocation of trial and appellate functions between the respective courts. Additionally, if the party bearing the burden of proof fails to satisfy his burden of proof by a preponderance of the evidence, his case fails to outweigh his adversary's case, and he necessarily loses. Miller v. Leonard, 588 So.2d 79 (La.1991). The only direct proof that the policies were actually delivered was Dumesnil's statement in the memorandum in support of the motion to continue which was filed in the bankruptcy proceeding. Although Dumesnil did not rebut this evidence, and, in spite of admission of his intent to create the security interest and deliver the policy, we cannot find that, based on the facts as outlined above, the trial court manifestly erred in finding that Cadle failed to carry its burden of proving that the policies were actually delivered.
PARTIES INTENDED TO SECURE INDEBTEDNESS WITH PLEDGE RATHER THAN ASSIGNMENT
Cadle argues that it created a security interest in the life insurance policies through an assignment. Dumesnil counters arguing first that the court should not allow Cadle to expand his original claim of pledge to include a claim of assignment. Second, it argues that no assignment was intended or created giving Cadle rights.
First, Cadle did not base its claim in its pleading on an assignment. The issue of assignment was not tried. The assignment documents were introduced as evidence to corroborate the alleged delivery of the security instrument for purposes of establishing a valid pledge. Indeed, as recognized by Dumesnil in his brief, the combined provisions of LSA-C.C. Art. 3152 which requires proof of "actual delivery" and Art. 3158(B)(2)(b) which provides that a pledge of life insurance "must be evidenced by a written assignment" make it imperative that Cadle prove not only delivery, but the execution of written assignments. As stated in Diesi Leasing, Inc. v. Morrow, 542 So.2d 838 (La.App. 3rd Cir.1989), writ denied, 548 So.2d 329 (La.1989), for an automatic enlargement of the pleadings under *1069 LSA-C.C.P. Art. 1154 to occur, the evidence admitted must not be pertinent to any other issue raised by the pleading. If the evidence was admissible for any purpose, it could not enlarge the pleading without the express consent of the opposing party. Because evidence relating to the assignment was necessary and pertinent to prove that a pledge was created, Cadle is precluded from now asserting that the security instrument is actually an assignment.
Even if our conclusion that the issue of assignment may not be raised for the first time on appeal were otherwise, we would be constrained to find that the security instrument which the parties intended to create was a pledge, not an assignment. Louisiana jurisprudence allows the use of an assignment as a security device. American Bank & Trust v. Louisiana Sav. Ass'n, 386 So.2d 96 (La.App. 3rd Cir.1980). In a contract of pledge, the debtor retains title of the thing which he places either actually or constructively in the hands of his creditor as security for payment of a debt. Scott, supra. Assignment is a species of sale which occurs between the transferor and transferee by vesting of title in the transferee. Id. The use of the word "assignment" in the "Assignment of Contract" which was introduced as plaintiff's exhibit, does not mandate a finding that the instrument is an assignment and not a pledge. Naquin v. American Bank of Luling, 347 So.2d 332 (La.App. 4th Cir. 1977), writ denied, 367 So.2d 1184 (La. 1979). Instead, the court should look to the intent of the parties to determine the nature of the transaction. American Bank & Trust, supra.
In the present case, the "Assignment of Contract" is a collateral assignment which is subject to the provisions of the contract and to any loan indebtedness that may exist. The collateral pledge agreement executed by Dumesnil to secure the note provides: "The following collateral security is hereby pledged to Capital Bank & Trust Co." It then lists the "assignment of" the eight life insurance policies. The collateral pledge agreement provides that in case any indebtedness secured by this agreement becomes due, the pledged funds may be immediately applied thereto, and that the property pledged shall be held by the pledgee as general collateral.
The instrument in the present case did not transfer ownership to the transferee. Neither the assignment document nor the collateral pledge agreement gave Capital Bank a present right to receive funds and apply them to the indebtedness evidenced by the note. In fact, the language of the collateral pledge agreement indicated that Capital Bank had no right to the policy proceeds until after the note came due or was otherwise declared due. See, generally, Peoples Bank & Trust Co., Natchitoches v. Harper, 370 So.2d 1291 (La.App. 3rd Cir.1979), writ denied, 371 So.2d 1330 (La. 1979). The facts illustrate that the parties in the present case intended a pledge, not an assignment. Thus, Cadle's argument that we should find a valid security instrument in the form of an assignment lacks merit.
CONCLUSION
In conclusion, we affirm the decision of the trial court.
First, we recognize that actual delivery of the policies is essential for the creation of a valid pledge.
Next, we find that the statement made by Dumesnil in a memorandum in support of a motion to continue in the prior bankruptcy proceeding is admissible as tending to prove actual delivery, but not as full proof of actual delivery. The failure of Dumesnil to answer a request for admissions in the prior bankruptcy proceeding may not be used against him in this state court proceeding. Based on the evidence contained in the record before us and on the standards of proof required, we cannot find that the trial court committed manifest error in its ruling that Cadle failed to carry its burden of proving actual delivery of the policies. Because delivery is essential for the existence of a valid pledge, the trial court did not err in finding that Cadle failed to establish a security interest in the *1070 form of a pledge in the life insurance policies.
Furthermore, we conclude that Cadle's pleadings may not be enlarged to cover a claim against Dumesnil for the creation of an assignment. Finally, the parties intended to create a pledge rather than an assignment.
For the foregoing reasons, the judgment of the trial court is affirmed. Cost of this appeal are assessed to The Cadle Company.
AFFIRMED.